**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| **GWENDOLYN G. CARANCHINI,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:17-cv-00775-DGK** |
| | ) | |
| **NATIONSTAR MORTGAGE LLC, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**GREGORY LEYH/GREGORY LEYH, P.C.'S OPPOSITION TO ECF 40,
DEFENDANT MARTIN LEIGH, P.C.'S RULE 55.03(C) MOTION FOR SANCTIONS**

Respectfully submitted,

**GRAVES GARRETT, LLC**

By: */s/ Jennifer Donnelli*
    Nathan F. Garrett, MO Bar #46500
    Jennifer Donnelli, MO Bar #47755
    1100 Main Street, Suite 2700
    Kansas City, MO 64105
    Telephone: (816) 256-3181
    Fax: (816) 256-5958
    jdonnelli@gravesgarrett.com

    ***Counsel for Gregory Leyh and Gregory
    Leyh, P.C.***

# TABLE OF AUTHORITIES

Pg.

*Allen v. Titan Propane, LLC*, 404 S.W.3d 914 (Mo. App. 2013)   14

*City of Kansas City v. Chung Hoe Ku*, 282 S.W.3d 23 (Mo. App. 2009)   13

*Commonwealth Land Title Ins. Co. v. Miceli*, 480 S.W.3d 354 (Mo. App. 2015)   12

*Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410 (Mo. banc 2014)   9, 10, 11, 17

*Dannix Painting, LLC v. Sherwin–Williams Co.*, 732 F.3d 902 (8th Cir. 2013)   6

*Deutsche Bank National Trust Company v. Vaughn*,
   524 S.W.3d 193 (Mo. App. 2017)   7, 8, 12,

*Doe v. Roman Catholic Diocese of St. Louis,* 311 S.W.3d 818 (Mo. App. 2010)   8

*Filla v. Norfolk Southern Ry. Co.*, 336 F.3d 806 (8th Cir. Mo. 2003)   13

*FV–I, Inc. for Morgan Stanley Mortgage Capital Holdings, LLC*,
306 Kan. 204 (2017)   9

*Hillary v. Trans World Airlines, Inc.*, 123 F.3d 1041 (8th Cir. 1997)   13

*Hudgins v. First Student, Inc.*, 853 F.Supp.2d 883 (E.D. Mo. 2012)   13

*Ingram v. Horne*, 785 S.W.2d 735 (Mo. App. 1990)   5, 10

*Killion v. Bank Midwest, N.A.*, 987 S.W.2d 801 (Mo. App. 1998)   7, 8, 18

*Kinder v. Missouri Dep't of Corrections,* 43 S.W.3d 369 (Mo. App. 2001)   6

*Mahoney v. Doerhoff Surgical Services, Inc.*, 807 S.W.2d 503 (Mo. 1991)   14

*Mueller v. Lemay Bank & Trust Co.*, 990 S.W.2d 690 (Mo. App. 1999)   14

*Noland v. State Farm Mut. Auto. Ins. Co.*, 853 S.W.2d 327 (Mo. App. 1993)   5, 10, 17

*Planned Parenthood of Kansas v. Donnelly*, 298 S.W.3d 8 (Mo. App. 2009)   9

*Sexton v. Jenkins & Associates, Inc.*, 152 S.W.3d 270 (Mo. banc 2004)   13

*Sparks v. PNC Bank*, 400 S.W.3d 454 (Mo. App. 2013)   7, 8, 18

*State ex rel. Accurate Const. Co. v. Quillen*, 809 S.W.2d 437 (Mo. App. 1991)   6

Case 4:17-cv-00775-DGK   Document 84   Filed 05/16/19   Page 2 of 21

*State v. Gardner*, 932 S.W.2d 858 (Mo. App. 1996)     5, 7

*State ex rel. Koster v. Professional Debt Management, LLC,*
351 S.W.3d 668 (Mo. App. 2011)     10

*State v. Polley*, 2 S.W.3d 887 (Mo. App. 1999)     13, 14

*St. Louis University v. Hesselberg Drug Co.*, 35 S.W.3d 451 (Mo. App. 2000)     14

*U.S. Bank, N.A. v. Smith*, 470 S.W.3d 17 (Mo. App. 2015)     7, 8, 12, 18

*Watson v. Wells Fargo Home Mortg., Inc.*, 438 S.W.3d 404 (Mo. banc 2014)     9, 10, 17

*Wesley v. Wells Fargo Bank, N.A.*, 569 S.W.3d 436 (Mo. App. 2018)     10

*Williams v. Southern Union Co.*, 364 S.W.3d 228 (Mo. App. 2011)     15

*Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887 (8th Cir. 2014)     7, 8, 9, 11, 13, 16, 18

## TABLE OF CONTENTS

INTRODUCTION     5

ARGUMENT     5

    Borrower's Claim Theories Have Never Been Rejected
    by the Missouri Appellate Courts     6

        Borrower's MMPA Claim Presented a Colorable Theory     9

        Borrower's Negligent Misrepresentation Claim Presented
        a Colorable Theory     11

    Borrower Was Not Collateral Estopped from Alleging Certain Facts and
    Conclusions     12

        The 2011 Remand Denial and the 2012 Dismissal Were Not
        on the Merits     13

        The 2012 Dismissal Addressed Different Issues     14

    Failing to Plead the Prior Proceedings Did Not Prove an Improper Purpose     15

    The Fraudulent Joinder Finding/Remand Denial Did Not Prove
    an Improper Purpose     16

Sanctions Did Not Issue in the Remand Denials Referenced by Martin Leigh     17

No Case Holds that Martin Leigh Did Not have a Duty to Investigate     17

Martin Leigh Had No Interest in the Promissory Note     18

The 8th Circuit Has Not Decided the Propriety of a Federal Court Applying
the Missouri State Sanctions Rule and There is a Circuit Split on the Question     19

CONCLUSION     19

Before sanctioning an attorney under Mo. R. Civ. P. 55.03(c), Missouri courts require an "extraordinary circumstance" and then proceed only "with great caution." *Ingram v. Horne*, 785 S.W.2d 735, 737-40 (Mo. App. 1990). Martin Leigh's deep ire against Gwen Caranchini ("Borrower") and her Former Counsel is not such a circumstance. It has led Martin Leigh to seek enormous sanctions ($145,000) on a claim dismissal obtained by another party in a procedural context the Eighth Circuit has never endorsed. Martin Leigh cannot prove the claims against it lacked the requisite support—it cites cases that are not binding, the Missouri appellate courts have not ruled on the determinative issues, and collateral estoppel does not apply.

Martin Leigh has succumbed to the temptation *Ingram* warns against—"[a]n accusation that a fellow attorney is engaging in unwarranted or illegal conduct through the filing of baseless pleadings," which "damages the reputation of that lawyer for integrity and competence..." 785 S.W.2d at 737, 740. From any measured perspective, Martin Leigh disregards how Missouri courts view Rule 55.03—that "[i]t is the right of counsel for every litigant to press his claim, even if it appears farfetched and untenable… Full enjoyment of that right … will be protected by appellate courts when infringed by trial courts." *State v. Gardner*, 932 S.W.2d 858, 861-62 (Mo. App. 1996). Martin Leigh should not be allowed to use sanctions to stop the development of law it dislikes: "there is no evidence that the framers of Rule 55.03 intended that it be used to [] chill the enthusiasm and creativity that is the lifeblood of the law." *Ingram,* 785 S.W.2d at 737; *Noland v. State Farm Mut. Auto. Ins. Co.*, 853 S.W.2d 327, 331 (Mo. App. 1993).

## ARGUMENT

Under Rule 55.03(d)(1)(A), Martin Leigh must "describe the specific conduct alleged to violate Rule 55.03(c)," thereby setting its burden of proof. Martin Leigh contends that the specific conduct was pre-removal—the filing of the Amended Petition, referring to that pleading

no less than 12 times.  (ECF 40, p. 1, ECF 41, p. 4)  Martin Leigh challenges two claims—

violation of the Missouri Merchandising Practices Act ("MMPA") and negligent

misrepresentation, both of which concerned its involvement preparing the instrument appointing

it as Successor Trustee and the charges it assessed against Borrower.  Martin Leigh does not go

on, however, to discuss specific provisions of Rule 55.03.  Martin Leigh's contentions appear to

involve the subjects set forth in Ex. A hereto based on the status of certain federal decisions

involving mortgage foreclosure, the Prior Proceedings,[1] or both.

**Borrower's Claim Theories Have Never Been Rejected by the Missouri Appellate Courts**
[Addressing Martin Leigh's Rule 55.03(c)(1) Improper Purpose/Fraudulent Joinder Contention
and Rule 55.03(c)(2) Misstatement of Law]

The Amended Petition is reviewed objectively under Rule 55.03—whether it was

reasonable for Former Counsel to file it in the legal landscape existing on the filing date.  *State*

*ex rel. Accurate Const. Co. v. Quillen*, 809 S.W.2d 437, 440 (Mo. App. 1991).  An objective

review necessarily evaluates the legal position at issue against the law that is binding because

there would be no other way for Rule 55.03(c)(2) to permit "a nonfrivolous argument for the

extension, modification, or reversal of *existing law* or the establishment of *new law*" without

some law being the standard of comparison.  Mo. R. Civ. P. 55.03(c)(2) (emphasis added).

It will take a Missouri Supreme Court decision to provide a binding answer on these

claims in this Court.  *Dannix Painting, LLC v. Sherwin–Williams Co.*, 732 F.3d 902, 905 (8th

Cir. 2013) ("When determining the scope of Missouri law, we are bound by the decisions of the

Supreme Court of Missouri."); *Kinder v. Missouri Dep't of Corrections,* 43 S.W.3d 369, 374

---

[1]      The "Prior Proceedings" refers collectively to the summary judgment was entered in favor of then loan
servicer Bank of America on pro se Borrower's claims for quiet title, declaratory judgment, and negligence (the
"2013 Summary Judgment," ECF 427, 10-cv-672), the May 18, 2012 dismissal of pro se Borrower's quiet title and
breach of fiduciary duty claims against then-trustee Kozeny & McCubbin, LC (the "2012 Dismissal," ECF 173, 10-
cv-672), and the remand denial entered November 28, 2011 (the "2011 Remand Denial," 2011 WL 5921364, 11-cv-
464).

(Mo. App. 2001) (appellate courts are "constitutionally bound to follow the most recent controlling decision of the Missouri Supreme Court," *citing* Mo. Const. art. V, § 2). Because the Missouri Supreme Court has not yet spoken, binding law does not exist, and Martin Leigh cannot prove a Rule 55.03 violation, particularly on claims that were never addressed on the merits.

When the Missouri Supreme Court has not spoken, "we must *predict* how the court would rule, and we follow decisions from the intermediate state courts when they are the best evidence of Missouri law." *Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 896-97 (8th Cir. 2014) (emphasis added). However, even if a Missouri appellate court's ruling would have been influential, none have spoken.[2] Martin Leigh cites only two published state cases on matters of foreclosure law,[3] but neither involved the MMPA and or a negligent misrepresentation claim.

At most, Missouri appellate courts have held that a successor trustee can advertise, conduct, and memorialize a foreclosure sale without investigation even if the borrower claims the debt is not in actionable default at the time. *Sparks v. PNC Bank*, 400 S.W.3d 454, 458 (Mo. App. 2013). But that principle is limited to "[w]hen requested by the creditor *to foreclose*" and relates to the "power *to sell* under a deed of trust" *Id*. (emphasis added).[4] *See also Killion v. Bank Midwest, N.A.*, 987 S.W.2d 801, 810-12, 813 (Mo. App. 1998) ("when requested by the creditor *to foreclose*, the trustee may proceed without making any affirmative investigation.") (emphasis added). In *Wivell*, the claims against the successor trustee related to its decision, *after being appointed*, to move forward with the *foreclosure sale* despite being informed that the debt

---

[2]     Even if they had, sanctions still have been denied on a filing contrary to them. *Gardner*, 932 S.W.2d at 861-62 ("While the legal issues presented have been firmly and frequently rejected by the appellate courts of this state, we are unable to conclude that under no circumstances could the law be changed by the state courts ….").
[3]     *U.S. Bank, N.A. v. Smith*, 470 S.W.3d 17 (Mo. App. 2015), and *Deutsche Bank National Trust Company v. Vaughn*, 524 S.W.3d 193, 197-98 (Mo. App. 2017).
[4]     *Sparks* addressed what investigation the trustee had done regarding the debt holder's "decision to dishonor a promised mortgage modification by National City…." 400 S.W.3d at 459.

holder had promised a loan modification that would stop the sale.[5]  773 F.3d at 894.  *Wivell* did not address the successor trustee's appointment to the role.  *Killion* concerned whether, prior to conducting the sale, the foreclosure trustee should have investigated the debt holder's "malice" and "retribution against the [borrowers] for refusing to sign the modification agreement and for challenging the contingent interest provision."  987 S.W.2d at 810-13.

The question here is different.  It concerns investigation into the preparation and acceptance of the successor trustee's appointment, which necessarily occurs before any sale and is not affected by the status of the debt.  *See* Amended Petition, ECF 9-6, at p. 12, ¶¶ 72-77. Martin Leigh conflates the acts of preparing a successor trustee appointment and accepting it with the activities of advertising, conducting, and reporting on the foreclosure sale.  However, the appointment or change of the successor trustee is a distinct act from the foreclosure sale itself and months or years may separate their occurrence.  *Sparks* merely holds that *if* there is a foreclosure sale, Martin Leigh need not actively determine whether the debt is then in default, but the Amended Petition does not allege any differently.

Martin Leigh does not rely on Missouri appellate decisions because there are none. Instead, Martin Leigh relies on federal published and unpublished rulings.[6]  However, even if the facts and claim theories are similar in these cases, they are not binding.  A federal court's role is "to interpret state law, not to fashion it."  *Wivell*, 773 F.3d at 896.  "Though meriting our respect, decisions of the federal district and intermediate appellate courts and decisions of other state courts are not binding on us."  *Doe v. Roman Catholic Diocese of St. Louis,* 311 S.W.3d 818, 823 (Mo. App. 2010).  "We remain fully cognizant of the right of Missouri courts to interpret

---

[5]     A secondary issue was whether it was acceptable for the successor trustee to receive fees for conducting the foreclosure sale, which is not at issue here.  *Id.*
[6]     Except for *Smith* and *Vaughn* (which have no bearing).

Missouri laws and that such interpretations are binding and conclusive on federal courts."
*Planned Parenthood of Kansas v. Donnelly*, 298 S.W.3d 8, 14 (Mo. App. 2009).

Even if the federal district court decisions are instructive, which is what they are at most, they are offset by the numerous Missouri circuit court decisions that have refused to dismiss similar claims on similar facts, including in a class action currently pending in Ray County, Missouri Circuit Court (Former Counsel cited nine such cases in seeking remand, ECF 8, pp. 3-5, and that listing that is incorporated herein).

What this divide at the trial court level illustrates is the absence of developed principles on some aspects of Missouri foreclosure law, including the successor trustee appointment. For example, no Missouri statute or case has spoken to *when* a debt holder must be in possession of the original promissory note within the meaning of the Missouri U.C.C. Article 3-301 to effectively appoint a successor trustee. Even in Kansas, a judicial foreclosure jurisdiction where trial courts are involved throughout the process, the Kansas Supreme Court only answered that question in 2017, holding that "standing in a foreclosure action is predicated on the plaintiff's ability to demonstrate … it was in possession of the note with enforcement rights *at the time it filed the foreclosure action*." *FV–I, Inc. for Morgan Stanley Mortgage Capital Holdings, LLC*, 306 Kan. 204, 219 (2017) (emphasis added). Martin Leigh is not entitled to sanctions in the absence of binding law on Borrower's claims. Beyond that, there are colorable reasons why binding law could come to exist in Borrower's favor.

**Borrower's MMPA Claim Presented a Colorable Theory**

While *Wivell* (which relied on *Conway* [7] and *Watson* [8]) did not address whether liability could exist for a successor trustee's act of preparing or accepting an appointment, a credible

---

[7]    *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 415 (Mo. banc 2014).
[8]    *Watson v. Wells Fargo Home Mortg., Inc.*, 438 S.W.3d 404 (Mo. banc 2014).

argument can be made that Missouri law will develop in that direction. In his practice series on Missouri foreclosure law, leading commentator Stephen Max Todd emphasizes the importance of a successor trustee like Martin Leigh reviewing an appointing entity's standing before accepting the appointment or prepares an appointment instrument:

> *Trustees* … can avoid these problems by examining the title report at an early date and comparing its information with that received from the client. The most common problem to arise in the early stages is that *the appointment of the successor trustee is executed by someone who does not appear to be the holder of the loan.* **If that is true, the appointment is invalid, and all acts done by the purported successor are also invalid, resulting in a void sale**.

38 Stephen Max Todd, *Missouri Practice Series: Missouri Foreclosure Manual* § 3:14 (rev. 2017-18), at p. 56 (emphasis added). *See Wesley v. Wells Fargo Bank, N.A.*, 569 S.W.3d 436, 445 n. 8 (Mo. App. 2018) (citing Stephen Max Todd, *Missouri Practice Series: Missouri Foreclosure Manual* in absence of established authority on the issue there at hand).

In tandem with this principle, the trend in Missouri is to expand the MMPA's coverage in the context of a mortgage loan. Until August 2014, even a debt holder was immune from the MMPA if its interest in the loan documents post-dated their origination under *State ex rel. Koster v. Professional Debt Management, LLC,* 351 S.W.3d 668 (Mo. App. 2011), and its kin. The rationale was that the debt holder was not an original party to the transaction, the "sale" of merchandise/services. RSMo. § 407.025. The Supreme Court in *Conway* and *Watson* reversed: "[t]o the extent *Professional Debt* and *Portfolio Recovery Associates* conflict with this holding, they should no longer be followed." 438 S.W.3d at 416. Notably, despite the existence of appellate decisions directly contradicting their positions, the mortgage borrowers in *Conway* and *Watson* were not sanctioned. Rather, they ultimately won a reversal of prior law, reflecting the tenacity and creativity protected by the *Ingram* and *Noland* courts.

*Wivell* shielded the successor trustee from an MMPA claim by contrasting its discrete role to *Conway*'s statement that "[b]ecause [the lender and the borrower] must continue to perform ... duties for the life of the loan, *the sale continues throughout the time the parties perform their duties.* Consequently, an action taken *while performing these continuing duties* is 'in connection with' the sale of a loan." *Wivell*, 773 F.3d at 895 (emphasis added); *Conway*, 438 S.W.3d at 415. Missouri courts may find that *Conway*'s rationale can just as well describe Martin Leigh's involvement, which came 10 years after the loan was "sold" in 2006 and thus reflects "*the sale continu[ing] throughout the time the parties perform their duties*."[9]

**Borrower's Negligent Misrepresentation Claim Presented a Colorable Theory**

The Amended Petition alleged that the false information in the successor trustee appointment was that Wilmington Trust, N.A.[10] was the holder of Borrower's Note. *See* Amended Petition, p. 12, ¶ 78. This presented a colorable theory. In connection with the June 28, 2016 appointment instrument at issue, Defendant Nationstar Mortgage, LLC has insisted *it* was the debt holder, even if wrongfully in possession of the Note, and that *it* was legally entitled to enforce the associated Deed of Trust by an appointment. (ECF 32, p. 11) ("Nationstar has the legal right to enforce the Note…Nationstar had the authority to appoint Martin Leigh as the Successor Trustee…"). However, Martin Leigh was appointed by Wilmington, not Nationstar.

The contrast between Wilmington and Nationstar is a distinction with a difference under Missouri law. In Missouri, even if one entity is in physical possession of a promissory note as an agent for another, it is that agent's principal which enjoys the status of legal holder of the note

---

[9]      Borrower's MMPA claim also was colorable because it concerned not only the appointment of successor trustee but also fees charged by Martin Leigh. Borrower's Deed of Trust contains a debt-specific cap to the fees in the Deed of Trust and Note and reasonableness limitation, and Borrower had a colorable allegation that the MMPA was violated when Martin Leigh charged fees beyond that allowed. *See* Amended Petition, at pp. 8-9, 11, 17-19, ¶¶ 50-54, 70, 106-09, 122; *see also* Amended Petition, ECF 9-6, p. 40/512.

[10]     As Successor Trustee to Citibank, N.A., as Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-HES ("Wilmington").

able to enforce the associated deed of trust by appointing a trustee. *U.S. Bank, N.A. v. Smith*, 470

S.W.3d 17, 23-24 (Mo. App. 2015). The *Smith* court held that an entity in physical possession of

the original instrument endorsed in blank can become "'a nonholder in possession of the

instrument who has the rights of a holder' under § 400.3–301." *Id.* However, "U.S. Bank (the

principal) was the legal holder of the Note even though the Note was still physically possessed

by Deutsche Bank, its agent … and, as holder, [U.S. Bank] it has a legally cognizable interest in

the Note *and is able to enforce the Note under the terms of the Deed of Trust*..." *Id.* at 24

(emphasis added). *See also Deutsche Bank National Trust Company v. Vaughn*, 524 S.W.3d

193, 197-98 (Mo. App. 2017) ("possession of the Note was delivered to an agent of Deutsche

Bank, and Deutsche Bank is entitled to enforce the Note.").

Here, Nationstar claims to have been in possession of the Note when Martin Leigh was

appointed as trustee, and claims to have appointed Martin Leigh (as the Court found in ECF 60),

but the appointment instrument itself says the grantor was Wilmington. *See* Amended Petition,

at p. 4, ¶ 25. (ECF 60, p. 3; ECF 32, p. 7, ¶ 19, p. 8, ¶ 20) A negligent misrepresentation claim

is colorable in these circumstances. (ECF 41, p. 16)

## Borrower Was Not Collateral Estopped from Alleging Certain Facts and Conclusions
[Addressing Martin Leigh's Rule 55.03(c)(1) Improper Purpose and Rule 55.03(c)(2)-(3)
Misstatements of Law and Fact]

Martin Leigh's dismissal was obtained by another party on grounds of fraudulent joinder,

not collateral estoppel, but Martin Leigh nevertheless contends that collateral estoppel entitles it

to sanctions.[11] (ECF 41, pp. 16-19) In this diversity action, Missouri common law governs

---

[11] Martin Leigh relies on collateral estoppel and does not, because it cannot, contend that the instant claims were barred by the related doctrine of res judicata. Martin Leigh cannot establish the requirements. *Commonwealth Land Title Ins. Co. v. Miceli*, 480 S.W.3d 354, 362 (Mo. App. 2015) *citing Lauber–Clayton, L.L.C. v. Novus Props. Co.,* 407 S.W.3d 612, 618 (Mo. App. 2013). The claims in the 2013 Summary Judgment were for quiet title and breach of fiduciary duty. Neither the 2013 Summary Judgment or the 2012 Dismissal were issued in a case to which Martin Leigh was a party and Martin Leigh does not claim to be in privity with the Successor Trustee in the earlier case—a competitor foreclosure trustee law firm—Kozeny & McCubbin.

whether collateral estoppel applies. *Hillary v. Trans World Airlines, Inc.*, 123 F.3d 1041, 1043 (8ᵗʰ Cir. 1997). It does not for several reasons.

**The 2011 Remand Denial and the 2012 Dismissal Were Not on the Merits**

First, collateral estoppel requires a prior adjudication in a judgment on the merits. *State v. Polley*, 2 S.W.3d 887, 893-94 (Mo. App. 1999). According to Martin Leigh, "there was a judgment on the merits…." (ECF 41, p. 18) Martin Leigh seems to be referring to either the 2011 Remand Denial or the 2012 Dismissal.[12] Neither was not on the merits.

The 2011 Remand Denial did not have dispositive effect, either at the district court level or on appeal. When ruling on a motion to remand, the district court "'should not 'step from the threshold jurisdictional issue into a decision on the merits.'" *Hudgins v. First Student, Inc.*, 853 F.Supp.2d 883, 886 (E.D. Mo. 2012) (citations omitted). "Like the district court, we have no power to decide the merits of a case over which we have no jurisdiction." *Filla v. Norfolk Southern Ry. Co.*, 336 F.3d 806, 811 (8ᵗʰ Cir. Mo. 2003). In *Wivell*, the Eighth Circuit reversed the Court's dismissal of the claims against the successor trustee with prejudice because the district court lacked subject matter jurisdiction to make a merits ruling on them. 773 F.3d at 896.

The 2012 Dismissal was issued without prejudice and was not an adjudication on the merits. (ECF 173, 10-cv-672, p. 5) "Dismissal without prejudice usually is not an adjudication on the merits of the claim and does not affect the plaintiff's right to refile the action." *Sexton v. Jenkins & Associates, Inc.*, 152 S.W.3d 270, 273 (Mo. banc 2004). The Court indicated the dismissal was without prejudice to allow Borrower (then pro se) to pursue other claims against the Successor Trustee. *City of Kansas City v. Chung Hoe Ku*, 282 S.W.3d 23, 32 (Mo. App.

---

[12] Martin Leigh does not, and cannot, argue that Borrower's voluntary dismissal of her 2014 claims against Kozeny & McCubbin and Nationstar was a final adjudication on the merits. (14-cv-00480) *O'Reilly v. City of Hazelwood*, 850 S.W.2d 96, 98 (Mo. 1993) (rejecting use of collateral estoppel based on a case voluntarily dismissed).

2009).  Although a dismissal without prejudice can be considered on the merits in limited circumstances, generally if it decides subject matter jurisdiction, those circumstances do not exist here.  *See Allen v. Titan Propane, LLC*, 404 S.W.3d 914, 915-16 (Mo. App. 2013) (summary judgment in negligence action issued with leave to amend did not have collateral estoppel effect on subsequent negligence action); *Mahoney v. Doerhoff Surgical Services, Inc.*, 807 S.W.2d 503, 506 (Mo. 1991) (discussing application of res judicata to a dismissal without prejudice when the plaintiffs did not pursue their claims later and the dismissal became "*res judicata* of what that judgment actually decides").  "Where there is a question of whether a previous decision went to the merits of the case, no preclusive effect is given to the earlier decision."  *St. Louis University v. Hesselberg Drug Co.*, 35 S.W.3d 451, 455 (Mo. App. 2000).

**The 2012 Dismissal Addressed Different Issues**

Second, collateral estoppel applies to issues, not claims, and the issues must be identical. *Mueller v. Lemay Bank & Trust Co.*, 990 S.W.2d 690, 692 (Mo. App. 1999); *Polley*, 2 S.W.3d at 889-90.  Although Martin Leigh describes the 2012 Dismissal's findings as broad, in reality, the decision was limited to the two claims against Kozeny & McCubbin (quiet title and breach of fiduciary duty, ECF 173, 10-cv-672, at p. 1).  Neither are now at issue.

Collateral estoppel thus did not bar the pleading of any of the four subjects about which Martin Leigh complains, some of which did not even relate to Martin Leigh.  For example, Martin Leigh takes issue with Borrower's allegations that her mortgage debt was not in default. Her claims against Martin Leigh primarily relate to its preparation of the Successor Trustee Appointment, not whether the debt holder had validly declared the loan to be in monetary default.  *See* Amended Complaint, at ¶¶ 114, 100-104, and 78.  Moreover, even if the 2013 Summary Judgment did effect collateral estoppel, its finding about the debt was premised on

timing: "Plaintiff has defaulted … by failing to pay the required amounts … *to the present*. Plaintiff *currently* owes $293,165.15 …" (ECF 41, pp. 9-10) (emphasis added) The Amended Petition was filed four full years later. Martin Leigh cites no caselaw allowing sanctions against an attorney in the face of a signed verification confirming the accuracy of a client's pleading allegations. Instead, Rule 55.03(c)(3) expressly allowed Former Counsel to " rely on the otherwise self-represented person's representation of facts, unless the attorney knows that such representations are false." Mo. R. Civ. P. 55.03(c)(3). Martin Leigh offers no evidence of Former Counsel's knowledge in connection with the Amended Petition to contradict Borrower's signed verification that "the facts contained therein are true and accurate according to her best information, knowledge, and belief." ECF 40, p. 3.

## Failing to Plead the Prior Proceedings Did Not Prove an Improper Purpose

Martin Leigh spends several pages (ECF 41, pp. 10-12) establishing that Former Counsel had actual knowledge of the Prior Proceedings, implicitly refuting a defense Former Counsel has never made—that he was unaware of the Prior Proceedings when filing the Amended Petition. Martin Leigh's claim under Rule 55.03(c)(1) regarding the Proceedings fails for two reasons. First, as even Martin Leigh acknowledges, the Amended Petition attached an affidavit from the Prior Proceedings as one of its exhibits and thus did not conceal their existence. (ECF 40, pp. 4, 6) Second, a petition in Missouri "shall contain (1) a short and plain statement of the facts showing that the pleader is entitled to relief and (2) a demand for judgment for the relief to which the pleader claims to be entitled." Mo. R. Civ. P. 55.05. The Prior Proceedings do not comprise either. A dismissal was reversed in *Williams v. Southern Union Co.* because collateral estoppel was found not to apply but, because the plaintiff had not appealed the sanctions order, the appellate court had no jurisdiction to reverse it. 364 S.W.3d 228, 231 n. 1, 235(Mo. App. 2011).

**The Fraudulent Joinder Finding/Remand Denial Did Not Prove an Improper Purpose**

Martin Leigh contends that Former Counsel should be sanctioned because the claims were dismissed on a remand denial. (ECF 41, pp. 19-20) There are several reasons this is wrong. First, Martin Leigh claims fraudulent joinder is a "practice condemned by the 8th Circuit" and "this is the fourth time [Former Counsel] has been caught doing it," but Former Counsel was not "caught doing it" in *Dunbar v. Wells Fargo Bank, N.A.* and *Welk v. GMAC Mortg.* Former Counsel had no involvement in those cases, which were pending in Minnesota federal court and governed by Minnesota law. Second, neither *Dunbar* or *Welk* are binding as to either their finding of fraudulent joinder as to the Minnesota state law claims or *Welk*'s *sua sponte* sanction order.

Third, *Dunbar* and *Welk* are distinguishable. Unlike Missouri, Minnesota law recognizes professional immunity for attorneys, and this was critical to the Eighth Circuit's determination that the foreclosure firm had been fraudulently joined. *McDonald v. Stewart*, 82 N.W.2d 437, 440 (Minn. 1970) ("an attorney acting within the scope of his employment as attorney is immune from liability to third persons for actions arising out of that professional relationship."). Rather than immunity for attorneys involved in foreclosures, "Missouri law recognizes a fiduciary relationship between trustee of deed of trust and both the debtor and creditor; trustee is considered to be agent of both debtor and creditor and should perform duties of the trust with impartiality and integrity." *Wivell,* 773 F.3d at 894. Moreover, Minnesota and Missouri foreclosure laws are not identical. The Eighth Circuit described the Minnesota foreclosure process as involving "sheriff's sales" and "foreclosure by advertisement if certain criteria are met," neither of which are applicable in Missouri. *See* RSMo. § 443.290.

Case 4:17-cv-00775-DGK   Document 84   Filed 05/16/19   Page 16 of 21

**Sanctions Did Not Issue in the Remand Denials Referenced by Martin Leigh**

Martin Leigh also references cases filed by three of Former Counsel's clients where, in unpublished opinions, fraudulent joinder was found, arguing this implies Former Counsel's improper purpose here.[13]  No sanctions were issued in any of these cases.  Further, an MMPA claim was discussed in *Gulotta* and *Dedrick* but the remand denials were issued prior to *Conway* and *Watson*.  Martin Leigh contends the sanctionable conduct occurred "prior to removal" on September 14, 2017, but *McCormies* was issued on May 31, 2018.  (ECF 40, p. 1, ECF 41, p. 4) *See Noland*, 853 S.W.2d at 331 ("The court is expected to avoid using the wisdom of hindsight and should test…what was reasonable to believe at the time the pleading … was submitted.").

**No Case Holds that Martin Leigh Did Not have a Duty to Investigate**

In alleged violation of Rule 55.03(c)(2), Martin Leigh claims that Former Counsel should be sanctioned for alleging "that Martin Leigh owed a duty to investigate who was the holder of Plaintiff's Note" in connection with preparing the successor trustee appointment.  Martin Leigh is wrong.  As shown above, Missouri courts have never precluded the theory.  Further, what Martin Leigh relies on to argue that "[t]hat issue was [] settled" did not actually address the issue.  Martin Leigh refers to "2013 WL 6987190."  (ECF 41, p. 13)  2013 WL 6987190 is the 2013 Summary Judgment and it ruled on claims against Bank of America, N.A. and not the Successor Trustee, then Kozeny & McCubbin.  In the 2013 Summary Judgment, the Court did not discuss what duties Kozeny & McCubbin had as successor trustee.  Finally, Missouri law recognizes certain duties of a successor trustee.  *Spires v. Edgar,* 513 S.W.2d 372, 378 (Mo. 1974).[14]  Such duties are not mentioned expressly in Borrower's Deed of Trust but Missouri law

---

[13]     *McCormies v.  Penny Mac Loan Services, LLC*,  5:18-CV-06003-GAF; *Dedrick  v.  Federal National Mortgage  Association*, 4:12-CV-01425-DGK;  and  *Gulotta  v.  Bank  of  America*, 4:12-CV-01335-BCW (ECF 59).
[14]     *Spires* involved a wrongful foreclosure action against the trustee originally named in the deed of trust—no appointment of a successor trustee existed in that case.  513 S.W.2d at 377-78 (Mo. 1974).  The failure to investigate

nevertheless demands them of a successor trustee. A credible argument exists that the decisions examining only the four corners of the deed of trust to define the role of the successor trustee are subject to reversal, particularly when Section 24 of Borrower's Deed of Trust (Substitute Trustee) provides that, by accepting the appointment as successor trustee, Martin Leigh took on all the powers of the originally-named trustee to be exercised in accordance with "Applicable Law." (ECF 9-6, p. 40/512)

## **Martin Leigh Had No Interest in the Promissory Note**

Under Rule 55.03(c)(3), Martin Leigh challenges Borrower's allegations about Martin Leigh's relationship to her Promissory Note—that it has "no right or interest in or to the Promissory Note," has "never been the holder of the Note," has "never had a right to enforce the Note," and does not own the Note. (ECF 41, p. 15) These are fully true statements. Martin Leigh holds no interest in the Promissory Note, which contains Borrower's covenants to repay the debt holder. The cases Martin Leigh points directly or indirectly to for the alleged premise that a successor trustee has no duty to investigate (*Wivell, Spires, Sparks, Killion*) prove this point. In each, the status of the borrower's repayment of the debt *to the debt holder* was a non-issue as to the successor trustee unless there was actual reason to know the foreclosure sale should not be conducted. The successor trustee had no financial interest in the status of the debt.

It also was true for Borrower to allege that Nationstar has "never been the holder of the Note" and does not own the Note. The "noteholder" in the Successor Trustee Appointment that Martin Leigh prepared was Wilmington. Under *Smith,* Wilmington was the legal holder of the Note with the right to enforce it even if Nationstar had physical possession of the Note. 470 S.W.3d at 24. Stopping short of calling itself the "noteholder," which would have been directly

---

by the trustee involved the acceptance of late payments by the debt holder, which still decided to foreclose and the trustee accepted its direction and conducted the sale. *Id.*

contrary to the corresponding statement in the appointment instrument that Martin Leigh prepared, Nationstar instead has argued "who has 'title,' 'ownership,' or who is the 'holder' of the Note are absolutely irrelevant." (ECF 32, p. 12) The other two allegations referred to by Martin Leigh (Nationstar "no right or interest in or to the Promissory Note" and has "never had a right to enforce the Note") are true for these reasons.

**The 8th Circuit Has Not Decided the Propriety of a Federal Court Applying the Missouri State Sanctions Rule and There is a Circuit Split on the Question**

In denying Former Counsel's Motion to Dismiss Martin Leigh's sanctions request, the Court found that the Eighth Circuit "has not squarely addressed the issue." (ECF 76, p. 4) Former Counsel seeks to preserve the question of the Court's jurisdiction to decide a Rule 55.03 motion and herein incorporates ECF48 and 56. The Amended Petition, the sole alleged misconduct at issue, was filed in state court, Martin Leigh had an opportunity to raise its concerns about the pleading in state court and its billing records prove it was working on the issue at the time but chose to forum shop, and Rule 55.03 is a state supreme court rule. A Missouri court should decide whether Rule 55.03 applies.

## CONCLUSION

The Court should deny this motion altogether but, if not, Martin Leigh is not entitled to any order ("jointly and severally" or otherwise) for $145,000. Martin Leigh presents absolutely no support for its request for $100,000, a purely punitive figure tied to nothing. Further, the firm's billings show work being charged after the remand denial that effected Martin Leigh's dismissal. Such work because it cannot be said to be the "direct result of the violation…" Mo. R. Civ. P. 55.03(d). The time entries also reveal Martin Leigh was working on sanctions issues before Nationstar removed the case. Martin Leigh did not seek relief then, preferring to wait for another forum and continuing its billing. A concern with the propriety of this case should have

been taken up at the earliest possible opportunity, which was by the point Martin Leigh participated in a lengthy TRO hearing. Such action would have demonstrated that its concerns were motivated by enforcing Missouri law instead of punishing Former Counsel.

Dated: May 16, 2019                    Respectfully submitted,

                                       **GRAVES GARRETT, LLC**

                                       By: */s/ Jennifer Donnelli*
                                           Nathan F. Garrett, MO Bar #46500
                                           Jennifer Donnelli, MO Bar #47755
                                           1100 Main Street, Suite 2700
                                           Kansas City, MO 64105
                                           Telephone: (816) 256-3181
                                           Fax: (816) 256-5958
                                           jdonnelli@gravesgarrett.com

                                       *Counsel for Gregory Leyh and Gregory Leyh, P.C.*

## Certificate of Service

I hereby certify that, on May 16, 2019, the foregoing document was served via the Court's e-filing system to the following counsel of record:

Thomas J. Fritzlen, Jr.
William H. Meyer
Gregory D. Todd
MARTIN LEIGH PC
2405 Grand Boulevard, Suite 410
Kansas City, MO 64108

*Counsel for Defendant Martin Leigh PC*

Harry N. Arger
Molly Thompson
Thomas Alleman
Caleb Halberg
DYKEMA GOSSETT PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606

*Counsel for Defendant Nationstar Mortgage, LLC*

I hereby certify that on, May 16, 2019, the foregoing document was served via U.S. Mail, first-class postage prepaid, to the following pro se litigant:

Gwendolyn Caranchini
1203 W. 62nd Street
Kansas City, MO 64113

*Plaintiff Pro Se*

                                                            */s/ Jennifer Donnelli*
                                                            Counsel for Gregory Leyh and
                                                            Gregory Leyh, P.C.