IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| GWENDOLYN G. CARANCHINI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-CV-00775-DGK |
| | ) | |
| NATIONSTAR MORTGAGE LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT MARTIN LEIGH PC'S REPLY TO
LEYH'S OPPOSITION TO THE MOTION FOR SANCTIONS**

COMES NOW Defendant Martin Leigh PC (Martin Leigh) and, for its Reply to Gregory Leyh and Gregory Leyh PC's (collectively "Leyh") Opposition to the Motion for Sanctions (Doc. 84, "Leyh's response"), states:

**I.    INTRODUCTION.**  Martin Leigh's Motion for Sanctions is based on the following objectively false representations knowingly made by Leyh and Caranchini in their First Amended Petition:

- "*Plaintiff does not owe any money pursuant to the terms of the Note.*" (First Amended Petition, "**Common Allegations of Fact**," at ¶ 8);
- "*Plaintiff is not in default on the Note*" (First Amended Petition, "**Common Allegations of Fact**," at ¶ 9);
- *"Plaintiff has not dishonored her Note"* (First Amended Petition, "**Common Allegations of Fact**," at ¶ 10); and
- Martin Leigh had a duty to determine who is the holder of Plaintiff's Note. (First Amended Petition at ¶¶ 49-58 and 77-79).

See Martin Leigh's Memorandum, Doc. 41 p. 9, 13.  Leyh's response fails to advance a good faith basis for making these false statements and he should be sanctioned particularly in light of the prior Caranchini rulings that Leyh brazenly ignored. Also, Leyh raises in federal court the

1

same positions that he alleged in the Amended Petition and that subjects him to sanctions under Rule 11.

**A.    Leyh Knowingly Made False Factual Allegations**.  Leyh suggests that the false allegations he made regarding Caranchini not being in default and owing no debt were not related to Martin Leigh and therefore Leyh cannot be sanctioned for making them. (Leyh response at 14 ¶ 3) ("…*Martin Leigh takes issue with Borrower's allegations that her mortgage was not in default. Her claims against Martin Leigh primarily relate to its preparation of the Successor Trustee Appointment, not whether the debt holder had validly declared the loan to be in monetary default*.") (emphasis added).  Leyh's assertion is baseless.  Specifically, Leyh alleged that Caranchini owed no debt and had not dishonored her Note. (See Doc. 9-6 at 3, ¶¶ 8, 9 and 10).  Leyh incorporated those false "Common Allegations of Fact" into Count I (Negligent Misrepresentation against Martin Leigh) and in Count III (MMPA Claim against Martin Leigh). (See Doc. 9-6 at 12 ¶ 71; and at 16 ¶ 97).  There is no disputing that Leyh leveled these false allegations against Martin Leigh.

**B.    The Passage of "*Four Full Years*" Did Not Justify Leyh's False Allegations.**
Leyh argues that the passage of "*four full years*" between 2013 (when Caranchini was found to be in default and to owe $293,165.15[1]) and 2017 (the filing of the Amended Petition) provides Leyh cover to allege that Caranchini was not in default and owed no debt.  (Leyh response at 15) (emphasis added).  Leyh's argument is not supported.

By making the "four full years" argument, Leyh concedes knowledge of the ruling that Caranchini was in default and owed $293,165.15. Leyh's knowledge of that adverse ruling undercuts any defense Leyh could make.

---

[1] See Caranchini v. Bank of Am., N.A., No. 4:10-CV-00672-DGK Doc. 427 at 6, 2013 U.S. Dist. LEXIS 138214, at *12 (W.D. Mo. Sep. 26, 2013).

Further, Leyh's argument that the passage of "four full years" permitted Leyh to essentially assume that Caranchini's adjudged debt had been satisfied does not ring true. Absent payment, the failure to pay a debt causes the debt to increase or at least remain the same—not vanish. (See 4:10-CV-00672-DGK, Doc. 427 at 6) ("Plaintiff currently owes $293,165.15 in unpaid principal, plus unpaid interest, escrow, fees and costs <u>which have continued to accrue since the default</u>.") (emphasis added). In 2017, and absent an investigation showing proof of payment during the four years, Leyh lacked any basis for alleging that Caranchini's $293,165.15 debt had vanished.

C. **Caranchini's *Verification* of the Amended Petition Does Not Insulate Leyh.**

Leyh's response argues that the false representations that Leyh made in the Amended Petition are unsanctionable because Caranchini *verified* the Amended Petition- presumably insulating Leyh from taint. Leyh response at 15. Leyh suggests that Mo.R.Civ.P. 55.03(c)(3) supports his position. Leyh's reliance on the rule is misplaced.[2]

Rule 55.03(c)(3) only applies to attorneys who are providing <u>drafting assistance</u> to otherwise <u>self</u>-represented persons. Specifically, Rule 55.03(c)(3) states that "An attorney providing drafting assistance may rely on the otherwise self-represented person's representation of facts, unless the attorney knows that such representations are false;". When Leyh filed the Amended Petition in 2017, Leyh was Caranchini's counsel. Leyh did not move to withdraw until November 2018. (Doc. 38). Therefore, Rule 55.03(c)(3) does not apply.

Additionally, even if Rule 55.03(c)(3) did apply to a lawyer representing a client in a case, the rule would still not protect Leyh from the false statements he made in the Amended

---

[2] See <u>In re Storment</u>, 873 S.W.2d 227, 229 (Mo. 1994) (interpreting the M.R.P.C. 4-3.3's and 3.4's predecessors in the context candor to the tribunal regarding a lawyer who assisted a client in testifying falsely.)

3

Petition. The Rule states that "... *unless the attorney knows that such representations are false*;". (Emphasis added). Leyh's response has already conceded that Leyh had knowledge of the Court's September 2013 Order addressing Caranchini's default and $293,165.15 debt in the context of Leyh's "four full years" argument briefed above.

**D.** **Leyh's Response *Admits* and *Denies* Knowledge.** Leyh argues that *"Martin Leigh offers no evidence of Former Counsel's knowledge in connection with the Amended Petition to contradict Borrower's signed verification..."* (Leyh response at 15.) Leyh's argument is groundless because in the very next paragraph of Leyh's response, Leyh admits knowledge of the prior Caranchini cases:

> Martin Leigh spends several pages (ECF 41, pp. 10-12) establishing that Former Counsel had actual knowledge of the Prior Proceedings, implicitly refuting a defense Former Counsel has never made—that he was unaware of the Prior Proceedings when filing the Amended Petition.

(Leyh response at 15, ¶ 2.) Leyh's response also admits knowledge of the Court's prior adverse rulings against Caranchini in the course of Leyh's "four full years" argument.

**E.** **Leyh's Absence of Candor to the Tribunal.** Leyh contends that he did disclose the prior Caranchini litigation based on an affidavit that Leyh attached to the Amended Petition. (Leyh response at 15 ¶ 2) *("the Amended Petition attached an affidavit from the Prior Proceedings as one of its exhibits and thus did not conceal their existence.")* Leyh's argument is not supported.

Specifically, in the prior paragraph of Leyh's response, Leyh argues the opposite, claiming that "*Martin Leigh offers no evidence*" that Leyh had knowledge of the prior Caranchini litigation:

4

> representations are false." Mo. R. Civ. P. 55.03(c)(3). Martin Leigh offers no evidence of Former Counsel's knowledge in connection with the Amended Petition to contradict Borrower's signed verification that "the facts contained therein are true and accurate according to her best information, knowledge, and belief." ECF 40, p. 3.

(Leyh response at 15 ¶ 1.) Part of the evidence that Martin Leigh referenced (Doc.41 at 10) was the Amended Petition's Exhibit 2 (Balog Affidavit) and its footer. (Doc. 9-6 at 46-47). The Balog Affidavit is the same document that Leyh claims that he used to disclose the prior Caranchini litigation. It is unacceptable for Leyh to argue in one paragraph of his brief that "*Martin Leigh offers no evidence*" of Leyh's knowledge (Doc. 84 at 15 ¶ 1) and then for Leyh to argue in the next paragraph that the same evidence (which Leyh just represented that Martin Leigh had not offered) shows that Leyh complied with his duty of candor and disclosed the prior Caranchini rulings. (Doc. 84 at 15 ¶ 2).

Further, Leyh's argument that he disclosed the prior Caranchini rulings by attaching the Balog Affidavit is unsupported by the allegation that Leyh actually made in the Amended Petition, which states:

> 22. On or about September 8, 2006, plaintiff's loan was apparently sold to Merrill Lynch Mortgage Lending, Inc. See Affidavit of Michael C. Balog, Responsible Officer of Aegis Mortgage Corporation and Aegis Lending Corporation, dated March 7, 2011, attached as Exhibit 2, at ¶ 4.

Amended Petition ¶ 22 (Doc. 9-6 at 4 ¶ 22). Whatever the allegation in ¶ 22 is supposed to be, it is clearly not a disclosure of prior adverse rulings against Caranchini regarding her Note.

**F.** **Collateral Estoppel.** Leyh argues that Martin Leigh cannot assert arguments based on collateral estoppel because Martin Leigh was not in privity with the Kozeny law firm (a prior successor trustee under Caranchini's Deed of Trust); and the claims made by Caranchini in

5

earlier litigation were not the same claims asserted in the Amended Petition.  (Leyh response at 12 and fn 11.)  Leyh's collateral estoppel position is incorrect.

First, Leyh's argument that Martin Leigh was required to claim that it was in *privity* with the Kozeny law firm misstates Missouri law.  (Leyh response at 12.)  Collateral estoppel can be applied by a non-party to the prior litigation (i.e., Martin Leigh) and it can be applied against Caranchini *or party in privity with Caranchini*.  (See St. Louis Univ. v. Hesselberg Drug Co., 35 S.W.3d 451, 455 (Mo.App.E.D. 2000) ("(3) was the party against whom collateral estoppel is asserted a party or in privity with a party to the prior adjudication") (emphasis added).  In short, the law does not require Martin Leigh to show privity with Kozeny for collateral estoppel to apply.

Next, Leyh argues that "Martin Leigh's dismissal was obtained by another party on grounds of fraudulent joinder, not collateral estoppel…" and presumably Leyh's false allegations are therefore protected from sanction.  (Leyh response at 12.)  Leyh's argument fails because the 8th Circuit has held that fraudulent joinder is itself sanctionable.  See Dunbar v. Wells Fargo Bank, N.A., 709 F.3d 1254, 1258 (8th Cir. 2013) and Welk v. GMAC Mortg., LLC, 720 F.3d 736, 738 (8th Cir. 2013).  Further, Leyh's argument ignores that the Order Denying Motion to Remand relied on the prior Caranchini cases when it concluded that Martin Leigh had been fraudulently joined in this case. (Doc. 24 at 1, 4.)

Leyh then argues that the various judgments and orders entered against Caranchini did not preclude him from making objectively false factual statements (i.e., Caranchini was not in default and owed no debt) because those rulings were not on the merits or that they addressed issues different from those raised in the Amended Petition.  (Leyh response at 13-14.)  Leyh's response ignores the Court's ruling in Caranchini v. Bank of Am., N.A., No. 4:10-CV-00672-

6

DGK, 2013 U.S. Dist. LEXIS 138214, at *12 (W.D. Mo. Sep. 26, 2013) ("Plaintiff has defaulted and failed to fulfill her obligations under the Note and Deed of Trust" and "currently owes $293,165.15"). Those issues were litigated and decided on the merits in the prior Caranchini litigation and Leyh has no basis for arguing otherwise.

Furthermore, Leyh's position is at odds with Missouri law because a dismissal without prejudice, when it is on the merits, has a preclusive effect. In <u>Mahoney v. Doerhoff Surgical Servs., Inc.</u>, 807 S.W.2d 503, 506 (Mo. 1991) the Missouri Supreme Court ruled that:

> **A dismissal without prejudice may nevertheless operate to preclude the party from bringing another action for the same cause, and may nevertheless be *res judicata* of what the judgment actually decided**. *Douglas v. Thompson,* 286 S.W.2d 833, 834 (Mo. 1956). When the effect of the order is to dismiss the plaintiff's action and not the pleading merely, then the judgment entered is final and appealable. *White v. Sievers,* 359 Mo. 145, 221 S.W.2d 118, 122 (banc 1949). **The dismissal without prejudice for failure of the petition to state a claim, when the party elects not to plead further, amounts to a determination that the plaintiff has no action**. In such a case, the judgment of dismissal - albeit without prejudice - amounts to an adjudication on the merits and may be appealed.

<u>Id</u>. at 506 (emphasis added). "Principles of issue preclusion dictate that, even when a court has dismissed a case without prejudice, an issue specifically and necessarily decided by that court is final and may not be relitigated in a second action brought in a court of concurrent jurisdiction." <u>Bentch v. Collins</u>, 28 S.W.3d 453, 456 (Mo.App.E.D. 2000) citing <u>Bachman v. Bachman</u>, 997 S.W.2d 23, 25 (Mo. App. E.D. 1999). "This form of issue preclusion is sometimes referred to as "direct estoppel."" <u>Id</u>. Clearly, the rulings in the prior Caranchini cases have preclusive effect regarding issues that were specifically decided. Leyh ignored those rulings at his peril.

    **G.**     **Fraudulent Joinder.** Leyh argues that the 8th Circuit's affirmation of sanctions against counsel who fraudulently joined law firms in <u>Dunbar v. Wells Fargo Bank, N.A.</u>, 709 F.3d 1254 (8th Cir. 2013) and in <u>Welk *v. GMAC Mortg., LLC*</u>, 720 F.3d 736 (8th Cir. 2013) bears no application to Leyh's fraudulent joinder of Martin Leigh because "*Unlike Missouri,*

7

*Minnesota law recognizes professional immunity for attorneys, <u>and this was critical to the Eighth Circuit's determination that the foreclosure firm was fraudulently joined</u>.*" (Leyh response at 16) (emphasis added). However, neither Dunbar nor Welk mentions the words "professional" or "immunity" and neither 8th Circuit decision suggests that Minnesota's "professional immunity" played any role in their holdings. Further, Leyh's observation that the statutory non-judicial foreclosure statutes for Missouri and Minnesota are different does not explain how fraudulent joinder should be treated differently in the Western District of Missouri.

**H.** **Duty to Investigate.** Leyh alleged that Martin Leigh owed a duty to investigate because a "*credible argument exists that the decisions examining only the four corners of the deed of trust to define the role of the successor trustees are subject to reversal…*" (Leyh response at 17). Leyh's argument cannot be squared with Spires v. Edgar, 513 S.W.2d 372, 378-79 (Mo. 1974) ("in the absence of unusual circumstances known to the trustee, he may, upon receiving a request for foreclosure from the creditor, proceed upon that advice without making any affirmative investigation"); Hallquist v. United Home Loans, Inc., 715 F.3d 1040, 1048 (8th Cir. 2013); Caranchini v. Bank of Am., N.A., No. 4:10-CV-00672-DGK, 2012 U.S. Dist. LEXIS 69765, at *7 (W.D. Mo. May 18, 2012) (dismissing Kozeny because there is no duty to investigate the property's title).

What is particularly distressing about Leyh's "Duty to Investigate" argument is that Martin Leigh produced the original Promissory Note to Caranchini and Leyh prior to the filing of suit. See Caranchini v. Nationstar Mortg. LLC, No. 4:17-CV-00775-DGK, 2019 U.S. Dist. LEXIS 16048, at *4 (W.D. Mo. Feb. 1, 2019). Martin Leigh's possession of the Note, and Leyh's knowledge of that fact, further demonstrate Leyh's lack of a good faith basis for advancing the "Duty to Investigate" argument.

8

Leyh suggests that his "Duty to Investigate" claim is supported by the Missouri Foreclosure Manual's reference that "*Trustees…can avoid these problems <u>by examining the title report</u> and comparing its information with that received from the client*." (Leyh response at 10.) Leyh is incorrect as this passage makes no reference to a "duty." Furthermore, on the precise point of a trustee's *duty* to investigate, the manual actually states:

> Where the deed of trust, in defining the trustee's duties, limits them to 'giving notice of the foreclosure sale, selling the property at a public auction to the highest bidder, conveying the property by a trustees' deed, and applying the proceeds of the sale,' the ***<u>trustee has no duty to investigate the various transfers of the promissory note and the deed of trust</u>***.

38 Todd, Missouri Practice Series § 2:3, p. 13 (2018-2019) (emphasis added).

**I.** **<u>Right to Foreclose the Deed of Trust.</u>** Leyh suggests that he was free to allege that Martin Leigh and Nationstar "have no right to enforce the Note." Doc. 9-6 at 3 ¶15. Leyh had no proof to support this allegation—after all he and Caranchini had inspected the original Note at Martin Leigh's office before filing the Amended Petition. In untangling this and the other various false statements that Leyh alleged in the Amended Petition, the Court relied on a prior Caranchini order when it ruled that:

> Plaintiff's claim fails because this Court has already determined that "Plaintiff's loan was one of hundreds of loans included in the MLMI 2006 HE-5 pool of assets ("Pooled Trust")." *Caranchini v. Bank of America, N.A.*, 4:10-CV-00672-DGK, 2013 U.S. Dist. LEXIS 138214, 2013 WL 6987190, at *3 (W.D. Mo. Sept. 26, 2013). The acronym "MLMI 2006 HE-5" is a short-hand expression used to describe Merrill Lynch Mortgage Investors Trust, Series 2006-HE5. *Id.* Plaintiff presents no new evidence that would change this Court's previous factual determination. Because Plaintiff's loan was in fact transferred to the Merrill Lynch Mortgage Investors Trust, the Appointment of Successor Trustee did not contain any false information, and Nationstar had the authority to appoint Martin Leigh as Successor Trustee.

<u>Caranchini v. Nationstar Mortg. LLC</u>, No. 4:17-CV-00775-DGK, 2019 U.S. Dist. LEXIS 16048, at *6-7 (W.D. Mo. Feb. 1, 2019). Given the Court's 2013 ruling in <u>Caranchini v. Bank of America, N.A.</u>, 4:10-CV-00672-DGK, 2013 U.S. Dist. LEXIS 138214, 2013 WL 6987190, at *3

(W.D. Mo. Sept. 26, 2013), Leyh had no basis for alleging that Martin Leigh's role as the successor trustee was in any way improper and he could not in good faith ignore the Court's prior Caranchini rulings.

**J.     Negligent Misrepresentation.** Leyh argues that the negligent misrepresentation claim was colorable because *"In connection with the June 28, 2016 appointment instrument at issue, Defendant Nationstar Mortgage, LLC has insisted it was the debt holder..."* Leyh response at 11. Leyh's representation is false. The Appointment of Successor Trustee document identifies Nationstar's status as an "attorney-in-fact" and the document actually states that it was executed by "Wilmington Trust, National Association, as Successor Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-HE5, *by Nationstar Mortgage LLC, as its attorney-in-fact.*" See Doc. 32-3, p. 39 Exhibit C-4.

**II.    CONCLUSION.** Leyh should be sanctioned under Mo.R.Civ.P. 55.03, FRCP 11 and under the Court's inherent authority because Leyh knowingly asserted false factual statements, he ignored the implications of the prior adverse Caranchini rulings in making them, and he now advances the same arguments in federal court. Further, Leyh's fraudulent joinder litigation tactic is itself sanctionable. In determining a sanction, it is noteworthy that Leyh expresses no remorse, responsibility, or self-awareness. Martin Leigh requests sanctions against Caranchini and Leyh, jointly and severally, in the amount of $100,000 in addition to attorneys' fees of at least $65,128 (in addition to fees incurred after April 16, 2019) and for such other relief as the Court deems just.

Respectfully submitted by,
MARTIN LEIGH PC

/s/ William H. Meyer
Thomas J. Fritzlen, Jr.     Mo. 34653
William H. Meyer            Mo. 42345

10

                         Gregory D. Todd         Mo. 56941
                         2405 Grand Blvd., Suite 410
                         Kansas City, MO 64108
                         (816) 221-1430     Phone
                         (816) 221-1044     Fax
                         tjf@martinleigh.com
                         whm@martinleigh.com
                         gdt@martinleigh.com
                         **COUNSEL FOR DEFENDANT MARTIN LEIGH PC**

## **CERTIFICATE OF SERVICE**

        I certify by my signature below that a true and correct copy of this document was served on those identified below on June 7, 2019 through the Court's ECF system:

Nathan F. Garrett
Jennifer Donnelli
GRAVES GARRETT, LLC
1100 Main Street, Suite 2700
Kansas City, MO 64105
Jdonnelliagravesgarrett.com
COUNSEL FOR GREGORY LEYH
AND GREGORY LEYH, PC

Harry N. Arger
Molly Thompson
Thomas Alleman
Caleb Halberg
DYKEMA GOSSETT PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
harger@dykema.com
mthompson@dykema.com
COUNSEL FOR DEFENDANT
NATIONSTAR

Gwendolyn Caranchini
1203 W. 62 St.
Kansas City, Missouri 64113
gwencaranchini@gmail.com

                                      /s/ William H. Meyer
                                      William H. Meyer