# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | | |
|---|---|---|
| GWENDOLYN G. CARANCHINI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-cv-00775-DGK |
| | ) | |
| NATIONSTAR MORTGAGE, LLC, | ) | |
| and MARTIN LEIGH, P.C., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING MOTION FOR SANCTIONS

In 2006, Plaintiff Gwendolyn Caranchini took out a $300,000 loan secured by a mortgage on her home. In 2009, Plaintiff stopped making payments on the loan. Since then she has filed a series of meritless lawsuits against the various note holders, loan servicers, and trustees on the deed of trust to prevent foreclosure.

The present case is Plaintiff's fourth such lawsuit. Two days before a scheduled foreclosure sale, Plaintiff, by and through her Counsel Gregory Leyh ("Leyh"), sued loan servicer Nationstar Mortgage, LLC ("Nationstar"), and successor trustee Martin Leigh, P.C. ("Martin Leigh").

Now before the Court is Martin Leigh's Motion for Sanctions Against Plaintiff and Leyh. Martin Leigh initially moved for sanctions under Missouri Rule of Civil Procedure 55.03 ("Rule 55.03"). Mot., ECF No. 40. In its reply brief, Martin Leigh argued that, by continuing in federal court to advocate positions taken in state court prior to removal, Leyh is subject to sanctions under Federal Rule of Civil Procedure 11 ("Rule 11").[1] Reply Br. at 1–2, ECF No. 93. The motion is

---

[1] In its reply brief, Martin Leigh also moved for sanctions under the Court's inherent authority. Reply Br. at 10, ECF No. 93. The Court declines to consider imposing sanctions under its inherent authority because Martin Leigh failed to develop this argument in its briefing or during the sanctions hearing.

GRANTED, and the Court holds as follows: (1) Plaintiff and Leyh knowingly made false statements in the First Amended Verified Petition; (2) Leyh lacked a good-faith basis to allege Martin Leigh owed a duty to investigate who held the Note before foreclosing; (3) Leyh knowingly brought frivolous claims against Martin Leigh; and (4) Leyh brought these frivolous claims for the improper purpose of defeating this Court's diversity jurisdiction and delaying foreclosure proceedings. The Court sanctions Plaintiff by ordering her to pay $5,000 of Martin Leigh's reasonable attorneys' fees and costs. The Court sanctions Leyh and his law firm, Gregory Leyh, P.C., by ordering them to reimburse Martin Leigh its reasonable attorneys' fees and costs incurred defending this litigation, including the cost of litigating the motion for sanctions, and to pay $50,000 into the Court as a monetary penalty.

## Standard

Rule 55.03 provides:

> (c) Representation to the Court. By presenting and maintaining a claim, defense, request, demand, objection, contention, or argument in a pleading, motion, or other paper filed with or submitted to the court, an attorney or party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that:

> (1) The claim, defense, request, demand, objection, contention, or argument is not presented or maintained for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

> (2) The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

> (3) The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. An attorney providing drafting assistance may rely on the

> otherwise self-represented person's representation of facts, unless
> the attorney knows that such representations are false . . . .

Mo. Sup. Ct. R. 55.03(c)(1)–(3). Rule 55.03 imposes an objective standard of conduct. *State ex rel. Accurate Const. Co. v. Quillen*, 809 S.W.2d 437, 440 (Mo. Ct. App. 1991).

The sanction a court may impose under Rule 55.03 is "limited to that which is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated." Mo. Sup. Ct. R. 55.03(d)(2). The sanction may include "directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation." *Id*. When a party is represented, the sanction for bringing a frivolous claim falls solely on the attorney. Mo. Sup. Ct. R. 55.03(d)(2)(A).

"Rule 11 of the Federal Rules of [Civil] Procedure is the source of Rule 55.03 and, with the exception of one inconsequential sentence in the Federal Rule, Rule 55.03 is the virtual equivalent of Federal Rule 11." *Quillen*, 809 S.W.2d at 440; *see also Dillard Dept. Stores, Inc. v. Muegler*, 775 S.W.2d 179, 186 (Mo. Ct. App. 1989) ("Rule 55.03 is substantially the same as Federal Rule 11, and it is appropriate to look to that provision for construction."). Hence, "[f]ederal decisions construing Rule 11 are persuasive in applying Rule 55.03." *Quillen*, 809 S.W.2d at 440.

Although the Eighth Circuit has not addressed whether a federal district court may issue sanctions under Rule 55.03 for pleadings filed prior to removal, several federal courts of appeal and the United Stated District Court for the Eastern District of Missouri have held a federal district court may impose sanctions under a state court counterpart to Rule 11 for pre-removal conduct. *See Tompkins v. Cyr*, 202 F.3d 770, 787 (5th Cir. 2000) ("If the state pleading rules [could not be enforced in federal court], then nothing would govern the original pleadings in these cases, and a

3

party who filed in bad faith might escape any penalty." (citation omitted)); *Griffen v. City of Okla. City*, 3 F.3d 336, 341 (10th Cir. 1993) (noting any other outcome "would mean that a plaintiff could file utterly baseless papers in state court and escape sanctions that otherwise would have been imposed on him by that court because . . . the defendant removed the case to Federal District Court." (citation omitted)); *see also World Outreach Conference Ctr. v. City of Chicago*, 591 F.3d 531, 538 (7th Cir. 2009); *Davis v. MCI Commc'ns Servs., Inc.*, 421 F. Supp. 2d 1178, 1183 n.2 (E.D. Mo. 2006. And as the Court noted in its prior order, *Caranchini v. Nationstar Mortg. LLC*, Case No. 4:17-CV-00775-DGK, 2019 WL 1519308, at *3 (W.D. Mo. Apr. 8, 2019), it finds federal appellate authority holding it has power to issue sanctions under Rule 55.03 to be persuasive.

Rule 11(b) provides:

> [b]y presenting to the court a pleading, written motion, or other paper-- whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery

Fed. R. Civ. P. 11(b). Like Rule 55.03, Rule 11 imposes an objective standard of conduct. *Isakson v. First Nat. Bank*, 985 F.2d 984, 986 (8th Cir. 1993) ("When determining whether a Rule 11 violation has occurred, a court must apply an objective reasonableness standard to determine whether the pleading was frivolous, groundless, or advanced for an improper purpose." (citation omitted)).

4

Like Rule 55.03 sanctions, Rule 11 sanctions are "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Rule 11 sanctions may likewise include "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation." *Id.* When a party is represented, Rule 11 sanctions for bringing a frivolous claim fall solely on the attorney. Fed. R. Civ. P. 11(c)(5).

The Court generally does not consider arguments formally raised for the first time in a reply brief. *See Mahaney v. Warren Cnty.*, 206 F.3d 770, 771 n.2 (8th Cir. 2000). The Court will do so in this case, however, because both rules apply the same standard, *see Dillard Dept. Stores, Inc. v. Muegler*, 775 S.W.2d 179, 186 (Mo. Ct. App. 1989), and both rules apply here.[2] Thus any of Plaintiff's or Leyh's conduct which runs afoul of Rule 55.03 necessarily runs afoul of Rule 11. Most importantly, neither Plaintiff nor Leyh are prejudiced by the Court's considering sanctions under Rule 11 since their arguments against Rule 55.03 sanctions also serve as arguments against Rule 11 sanctions. In fact, Plaintiff and Leyh cite to multiple cases imposing sanctions under Rule 11 and to the 1991 Committee Comments to Rule 11 as persuasive authority on whether and to what extent the Court should impose a sanction under Rule 55.03. *See* Post-Hearing Br. at 9–11, 15, 17, 18, ECF No. 122.

---

[2] Rule 55.03 applies here because Leyh filed the initial pleading in Missouri state court. Notice of Removal, ECF No. 1. Rule 11 applies here because, after removal, Leyh advocated for the initial pleading by arguing in a motion to remand and his responses to the instant motion for sanctions that the claims were colorable. Mot. to Remand, ECF No. 8; Suggestions in Opp'n., ECF No. 84; Post-Hearing Br., ECF No. 122; Suppl. Br., ECF No. 124.

5

## Background

Based on the record and the credible evidence presented at the sanctions hearing on October 13, 2020, the Court finds the following facts.

### Creation of the Note and the Deed of Trust

On June 10, 2006, Plaintiff borrowed $300,000 from Aegis Lending Corporation ("Aegis") and executed an adjustable-rate note ("Note") payable to Aegis in the original principal sum of $300,000 with interest, until the Note matured on July 1, 2036. The Note explicitly provided it could be transferred. As part of the transaction, Plaintiff executed and delivered to Aegis a deed of trust ("Deed of Trust"), which granted the Note holder a security interest in Plaintiff's home ("the Property"). The Deed of Trust provided that the Note may be sold and the loan servicer changed. It also provided for the removal and appointment of trustees on the Deed of Trust.

### History of the Note and Deed of Trust

After Plaintiff executed the Note, Aegis transferred the Note and Deed of Trust to Aegis Mortgage Corporation, which endorsed the Note in blank without recourse. Plaintiff's loan was then bundled with hundreds of other loans in the Merrill Lynch Mortgage Investors Trust Series 2006-HE5 ("MLMI Trust Series 2006-HE5") pool of assets. The Note and Deed of Trust were subsequently transferred to various loan servicers, trustees, and successor trustees.

The transfers relevant to this motion are as follows:

1. On November 2, 2007, Citibank, N.A., the trustee for MLMI Trust Series 2006-HE5, removed Todd Hamby, the initial trustee of the Deed of Trust, and appointed Kozeny & McCubbin, LLC ("Kozeny & McCubbin"), as successor trustee of the Deed of Trust. Appointment of Successor Trustee, Ex. H to Suggestions in Supp. of Mot. for Summ.

J., *Caranchini v. Bank of Am., N.A.*, Case No. 4:10-CV-00672-DGK (W.D. Mo. Sept. 20, 2012), ECF No. 259-12.

2. On July 1, 2013, Bank of America (the loan's servicer on that date), transferred its duties as loan servicer to Nationstar. Janati Aff. ¶ 13, Ex. C to Suggestions in Supp. of Mot. for Summ. J., ECF No. 32-3 at 3; *see also* Welcome Letter, Ex. C to Suggestions in Supp. of Mot. for Summ. J., ECF No. 32-3 at 32.

3. At some point before June 28, 2016, "Wilmington Trust, N.A., as Successor Trustee to Citibank, N.A., as Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-HE5" ("Wilmington Trust"), became the Note holder. Appointment of Successor Trustee, Ex. 4 to V. Pet., ECF No. 9-6 at 52.

4. On June 28, 2016, Nationstar, acting as Wilmington Trust's attorney-in-fact, appointed Martin Leigh as successor trustee of the Deed of Trust, replacing Kozeny & McCubbin. *Id.* at 52–53.

Nationstar had physical possession of the Note on June 28, 2016 when it appointed Martin Leigh successor trustee, and Martin Leigh obtained physical possession of the Note on July 26, 2016. Nationstar remained the loan's servicer and Martin Leigh remained the trustee on the Deed of Trust through the remaining life of the loan.

### Plaintiff's History Litigating the Note and Deed of Trust

In 2009, Plaintiff defaulted under the Note and Deed of Trust by failing to make the required monthly payments. Nevertheless, the Property was not foreclosed on until May 2019, because Plaintiff filed a series of meritless lawsuits to delay the process and increase the cost of foreclosure, dissuading the Note holder and others from foreclosing.

7

Plaintiff, a disbarred attorney,[3] brought a pro se lawsuit ("Lawsuit I") on April 29, 2010, in the Circuit Court of Jackson County, Missouri, against a variety of entities who possessed or interacted with the Note or Deed of Trust up to that point, including Bank of America, Aegis, and the Mortgage Electronic Registration System, Inc. ("MERS"), all of whom were citizens of different states than Plaintiff. Plaintiff's petition brought claims for breach of a loan modification agreement, injunctive relief to prohibit defendants from foreclosing on the property, and a declaratory judgment quieting title in her favor.[4] Plaintiff primarily alleged that the Note and Deed of Trust were not enforceable because of defects in transferring the Note and in communicating with Plaintiff about these transfers and a potential loan modification.

Defendants removed the case to federal court on July 6, 2010, invoking the Court's diversity jurisdiction. Plaintiff then filed multiple motions to remand, all of which the Court denied.

While this first lawsuit was pending, Plaintiff filed a second pro se lawsuit ("Lawsuit II") on September 20, 2010, in the Circuit Court of Jackson County, Missouri. Lawsuit II brought claims that were substantially similar to those in Lawsuit I and some additional claims. Relevant to the motion for sanctions, count three brought a breach of fiduciary duty claim against a new defendant, Kozeny & McCubbin, a Missouri citizen, for its actions undertaken as trustee on the Deed of Trust. Lawsuit II alleged that a trustee has a duty to investigate a property's title, Kozeny

---

[3] Prior to her disbarment, Plaintiff was repeatedly sanctioned for violating Rule 11. Another court in this district previously sanctioned Plaintiff and her client for falsifying a document and knowingly offering it into evidence. The court dismissed the client's case, sanctioned Plaintiff $25,000, and sanctioned the client $8,882.50. *See Pope v. Fed. Express Corp.*, 49 F.3d 1327, 1328 (8th Cir. 1995) (upholding the district court's sanctions under Rule 11). A federal court in another district also sanctioned Plaintiff $50,000 for asserting a claim without conducting a reasonable inquiry into whether it was well grounded in fact, advancing the action for an improper purpose, and needlessly increasing the cost of litigation. *White v. Gen. Motors Corp., Inc*., 908 F.2d 675, 679–80 (10th Cir. 1990) (holding the district court did not abuse its discretion in deciding to impose sanctions under Rule 11).

[4] Notice of Removal, *Caranchini v. Bank of Am., N.A.*, Case No. 4:10-CV-00672-DGK (W.D. Mo. July 6, 2010), ECF No. 1; Pet., Case No. 4:10-CV-00672-DGK, ECF No. 1-2; Am. Pet., Case No. 4:10-CV-00672-DGK, ECF No. 1-3.

& McCubbin breached this duty by failing to investigate, and, as a result, Kozeny & McCubbin had placed a cloud on the title of her home, damaging her.[5]

Defendants removed Lawsuit II to federal court despite the presence of Kozeny & McCubbin, arguing Kozeny & McCubbin was a nominal party which Plaintiff fraudulently joined to defeat diversity. The Court agreed and denied Plaintiff's motion to remand.[6] After consolidating the two lawsuits, the Court granted Kozeny & McCubbin's motion to dismiss, holding Plaintiff failed to state a claim against it. *Caranchini v. Bank of Am., N.A.*, Nos. 4:10-CV-0672-DGK, 4:11-CV-0464, 2012 WL 1833396 (W.D. Mo. May 18, 2012) ("2012 dismissal"). The Court observed in the 2012 dismissal that, under Missouri law, "[t]he duties and powers of a trustee are fixed by the terms of the contract, namely, the deed of trust." *Caranchini v. Bank of Am., N.A.*, 2012 WL 1833396, at *3. The Court held that, under the Deed of Trust, Kozeny & McCubbin's duties were limited to "giving notice of any foreclosure sale, selling the property at a public auction to the highest bidder, conveying the property by trustees' deed, and applying the sale proceeds," and did not include "an affirmative duty to investigate the property's title or remove any clouds that a third-party places upon it." *Id.*

On September 26, 2013, the Court granted summary judgment to the remaining defendants on all claims, finding that after Plaintiff executed the Note,

> Aegis subsequently endorsed the Note to Aegis Mortgage Corporation without recourse. Aegis Mortgage Corporation then *endorsed the Note in blank without recourse*. Aegis Mortgage Corporation transferred the Note to Merrill Lynch Mortgage

---

[5] Notice of Removal, *Caranchini v. Bank of Am., N.A.*, Case No. 4:11-CV-0464-DGK (W.D. Mo. May 4, 2011), ECF No. 1; Second Am. Pet. at ¶¶ 50–55, Case No. 4:11-CV-0464-DGK, ECF No. 1-4. Notably, Plaintiff also pled that "Removal to Federal Court is not available as Kozeny & McCubbin, one of the defendants, as well as the 'mortgaged residence', are both Missouri Defendants making removal based upon diversity impossible." Second Am. Pet. at ¶ 2, Case No. 4:11-CV-0464-DGK, ECF No. 1-4.

[6] Order Den. Mot. to Remand at 4–7, *Caranchini v. Bank of Am., N.A.*, Case No. 4:11-CV-0464-DGK (W.D. Mo. Nov. 28., 2011), ECF No. 41.

> Lending ("Merrill Lynch"). Pursuant to a Pooling and Servicing
> Agreement ("PSA"), the Note was transferred to CitiBank, N.A., as
> Trustee for the MLMI Trust Series 2006–HE5.

*Caranchini v. Bank of Am., N.A.*, Nos. 4:10-CV-00672-DGK, 4:11-cv-0464, 2013 WL 5407206,

at *3 (W.D. Mo. Sept. 26, 2013) (granting the MERS Defendants summary judgment) (emphasis

added); *see also Caranchini v. Bank of Am., N.A.*, Case No. 4:10-CV-00672-DGK, 2013 WL

6987190, at *3 (W.D. Mo. Sept. 26, 2013) (similar wording in order granting remaining defendants

summary judgment). Plaintiff then appealed, arguing the Court erred in denying her earlier

motions for remand. *Caranchini v. Bank of Am. Nat. Ass'n*, 566 F. App'x 549 (8th Cir. 2014).

On May 20, 2014, while her appeal was pending, Plaintiff filed a third pro se lawsuit

("Lawsuit III") in the Circuit Court of Jackson County, Missouri, seeking to prevent foreclosure.

This time she sued Nationstar and Kozeny & McCubbin. Her petition sought to quiet title in

Plaintiff's home free and clear of the Deed of Trust, a declaratory judgment that the Note was null

and void, and a declaratory judgment that Kozeny & McCubbin was not a valid trustee.[7]

Nationstar removed the case to federal court. Plaintiff moved for remand and Nationstar

moved to dismiss. While the motions were pending, the Eighth Circuit issued its order affirming

the Court's denials of remand in Lawsuit II. *Id.* Plaintiff then voluntarily dismissed Lawsuit III

without prejudice.[8]

### Plaintiff's Present Lawsuit

Plaintiff brought the present lawsuit, her fourth lawsuit challenging enforcement of the

Note and Deed of Trust, in Jackson County Circuit Court on August 15, 2017, two days before a

---

[7] Notice of Removal, *Caranchini v. Nationstar Mortg. LLC*, Case No. 4:14-CV-00480-DGK (W.D. Mo. May 30, 2014), ECF No. 1; Pet., Case No. 4:14-CV-00480-DGK, ECF No. 1-2.

[8] Pl.'s Mot. to Dismiss, *Caranchini v. Nationstar Mortg. LLC*, Case No. 4:14-CV-00480-DGK (W.D. Mo. Sept. 3, 2014), ECF No. 17; Order Granting Mot. to Dismiss, Case No. 4:14-CV-00480-DGK (W.D. Mo. Sept. 23, 2014), ECF No. 21.

scheduled foreclosure sale of the Property.  Pet., ECF No. 9-3.  This time Plaintiff retained an attorney, Leyh, to represent her.  Along with her Petition, Plaintiff filed a motion for a temporary restraining order, as well as preliminary and permanent injunctions.  Pet., ECF No. 9-3; Mot. ECF No. 9-1; Mem. In Supp., ECF No. 9-2.

The next day, the Jackson County Court granted Plaintiff's preliminary injunction request but required her to post a $5,000 bond.  Order Granting Inj., ECF No. 9-4.  That same day, Plaintiff filed her First Amended Verified Petition ("the Verified Petition") which is the operative pleading in this case.  V. Pet., ECF No. 9-6.  Consistent with its being captioned a "Verified Petition," the last page contains a sworn statement from Plaintiff before a licensed notary that "she has read the foregoing First Amended Verified Petition . . . and the facts contained therein are true and accurate according to her best information, knowledge, and belief."  V. Pet. at 24.

The Verified Petition brought claims against Martin Leigh for negligent misrepresentation (Count One) and violation of the Missouri Merchandising Practice Act ("MMPA") (Count Three), and claims against Nationstar for negligent misrepresentation (Count Two) and violation of the MMPA (Count Four).

Relevant to the motion for sanctions, the Verified Petition alleged:

> 8.     Plaintiff does not owe any money pursuant to the terms of the Note.
>
> 9.     Plaintiff is not in default on the Note.
>
> 10.    Plaintiff has not dishonored her Note.
>
>                                 . . .
>
> 14.    Defendants have no right or interest in or to the Promissory Note.

11

15. Defendants are not and have never been the holder of the Note, and have never had a right to enforce the Note.

16. As is explained further in significant detail, [D]efendants are not and have not been the owner of the Note, and have no right to enforce the Note. Consequently, it is impossible for plaintiff to be in default to [D]efendants.

. . .

34. Upon information and belief, the original Note was not transferred to Merrill Lynch Mortgage Investors Trust, Series 2006-HE5 as required in order to allow Merrill Lynch Mortgage Investors Trust, Series 2006-HE5 to enforce the instrument in accordance with Section 400.3-301 RSMo.

V. Pet. ¶¶ 8–34.[9] In both a preliminary section captioned "Martin Leigh's Breach of Duty" and in the body of the negligent misrepresentation claim against Martin Leigh, the Verified Petition alleged Martin Leigh breached a fiduciary duty to investigate who held the Note. V. Pet. ¶¶ 56–59, 78–79.

The Verified Petition did not acknowledge the Court's prior ruling that a successor trustee's duties under the Deed of Trust are limited to "giving notice of any foreclosure sale, selling the property at a public auction to the highest bidder, conveying the property by trustees' deed, and applying the sale proceeds," and "[do] not include an affirmative duty to investigate the property's title." Nor did it plead that Plaintiff was seeking an extension, modification, or reversal of existing law, or the establishment of new law.

Nationstar removed this case to federal court on September 14, 2017, alleging diversity jurisdiction. It argued Martin Leigh's citizenship should be ignored for purposes of evaluating diversity because it had been fraudulently joined. Notice of Removal ¶¶ 6, 14–17, ECF No. 1.

---

[9] These allegations are identical to those made in the initial, unverified Petition. Pet., ECF No. 9-3.

12

Plaintiff subsequently moved for remand, arguing her claims were colorable for purposes of fraudulent joinder analysis because no Missouri state court had ever granted a motion to dismiss a negligent misrepresentation claim or MMPA claim against a successor trustee, and many such motions had been filed in state court. Mot. for Remand, ECF No. 8.

The Court denied the motion to remand and dismissed the claims against Martin Leigh.[10] The Court held Plaintiff's negligent misrepresentation claim failed "based entirely on law discussed or facts found in previous *Caranchini* cases." Order, ECF No. 24 at 4. After reciting from prior orders, the Court reiterated that, "[t]he Deed of Trust does not impose upon Martin Leigh—the successor trustee—any duty regarding signing, filing, or recording documents about the Property, or to investigate transfers of the Note." *Id*. The Court also held Plaintiff's MMPA claim failed because a successor trustee's "alleged failure to perform duties attendant to foreclosure is not actionable under the MMPA." *Id*. at 6. Thus, neither claim was colorable. *Id*.

On October 5, 2017, Martin Leigh served, but did not file, the pending motion for sanctions against Plaintiff and Plaintiff's Counsel Leyh. Mot. at 2. On November 7, 2018, counsel for Martin Leigh met and conferred with Leyh, but were unable to resolve the issues raised in the motion. *Id*. On November 16, 2018, Martin Leigh filed the pending motion. [11]

---

[10] The Court had the power to deny remand and dismiss the claims because under the doctrine of fraudulent joinder, a court may "assume jurisdiction over a facially nondiverse case temporarily and, if there is no reasonable basis for the imposition of liability under state law, dismiss the nondiverse party from the case and retain subject matter jurisdiction over the remaining claims." *Caranchini v. Nationstar Mortg. LLC*, Case No. 4:17-cv-775-DKG, 2018 WL 10613873, at *2 (W.D. Mo. Aug. 16, 2018) (quoting *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1031 (8th Cir. 2012)).

[11] Rule 55.03 requires a party seeking sanctions to serve the motion on the respondent at least thirty days before filing the motion. Mo. Ct. R. 55.03(d)(1)(A). This "safe-harbor" provision allows a respondent to a prospective motion for sanctions time to withdraw or correct the ostensibly offensive pleading. Rule 55.03 also states "[a] motion for sanctions under this Rule 55.03 shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate Rule 55.03." *Id*. By serving the motion, which describes Plaintiff's and Leyh's conduct, on Plaintiff and Leyh more than thirty days before filing the motion in this Court, Martin Leigh complied with these requirements.
    The Court also finds Martin Leigh complied with the procedural requirements of Rule 11. Rule 11 requires a party seeking sanctions to serve the motion on the respondent at least 21 days before filing. Fed. R. Civ. P. 11(c)(2).

13

The motion requests the Court impose sanctions against Plaintiff and Leyh jointly and severally in the amount of $100,000. It also requests they be ordered to pay at least $65,128 in attorneys' fees and costs incurred in defending this case from August 17, 2017 to April 16, 2019 and additional fees accrued between April 17, 2019, and the present. Reply at 10, ECF No. 93; Aff., ECF 77-1.

While the motion for sanctions was being briefed, the Court granted Nationstar's motion for summary judgment. *Caranchini v. Nationstar Mortg. LLC*, Case No. 4:17-cv-775-DKG, 2019 WL 418119 (W.D. Mo. Feb. 1, 2019). Plaintiff appealed the grant of summary judgment in favor of Nationstar, and the Eighth Circuit affirmed. *Caranchini v. Nationstar Mortg. LLC*, 785 F. App'x 353 (8th Cir. 2019). Plaintiff did not appeal the dismissal of her claims against Martin Leigh.

As a result of Plaintiff's lawsuit, Martin Leigh postponed foreclosure on the Property for nearly two years. Tr. at 10. Foreclosure finally occurred in May 2019. Tr. at 10, ECF No. 118.

### Evidence Presented at the Sanctions Hearing

On October 13, 2020, the Court held a hearing on Martin Leigh's motion for sanctions. Plaintiff did not attend the hearing. Leyh appeared with counsel and testified.

Based upon his testimony at the sanctions hearing, the Court deems Leyh an untrustworthy witness. The Court bases its credibility determination on a combination of factors, including his evasiveness answering certain questions and his demeanor. At times during his cross-examination,

---

Martin Leigh met the safe-harbor requirement because it filed the instant motion more than 21 days after serving it on Plaintiff and Leyh.

Rule 11 also requires "[a] motion for sanctions . . . be made separately from any other motion and . . . describe the specific conduct that allegedly violates Rule 11(b)." Though Martin Leigh's initial motion did not reference Rule 11, it did describe the specific conduct upon which Martin Leigh sought sanctions under a nearly identical provision. Plaintiff and Leyh therefore had notice of the allegations and arguments upon which Martin Leigh sought sanctions and had the opportunity to correct or withdraw the pleadings. *See Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003) ("Due process is satisfied if the sanctioned party has a real and full opportunity to explain its questionable conduct before sanctions are imposed.").

14

it appeared Leyh had adopted a strategy of only conceding facts adverse to his position if they could be proven. At times during his direct examination, his goal appeared to be to confuse, obfuscate, and shift the Court's focus to irrelevant issues, as evidenced by the number of times the Court had to stop him from discussing tangential issues.

The Court also bases its credibility determination on Leyh's testimony regarding his state of mind in drafting the complaint. At Leyh's request, Martin Leigh produced the Note to Leyh for inspection in its office on August 14, 2017. Tr. at 5–6, 40. Leyh brought a flashlight and a magnifying glass with him to the inspection so that he could examine the signatures on the Note. Tr. at 5–6, 40–41. Leyh did not indicate that he noticed any inconsistencies or issues upon inspection of the Note, nor did he testify to that effect. Leyh filed the Petition the next day, and filed the Verified Petition the day after that. Both the original petition and the Verified Petition alleged that Martin Leigh did not possess the Note. Tr. at 6; Pet., ECF No. 9-3; V. Pet., ECF No. 9-6. Leyh testified that he made this allegation because he was unable to tell whether Martin Leigh possessed the actual Note or a forgery since he was "not a document examiner," Tr. at 40–41, despite that he routinely retained document examiners in his practice litigating foreclosure cases. Tr. at 41. Leyh ultimately conceded at the hearing that the Note he examined on August 14, 2017 "must be the original." Tr. at 41. Considering that on the day of the sanctions hearing, Leyh possessed no more information about the Note's authenticity than he did when he viewed the Note in Martin Leigh's office, the Court finds Leyh's testimony regarding his state of mind in drafting the complaint to be disingenuous.

Because certain portions of Leyh's testimony support inferences adverse to his position, the Court finds these portions of Leyh's testimony to be credible. For example, Leyh testified that Plaintiff came to see him in early 2016. When Plaintiff came to him, Leyh made it his business to

read the Court's prior orders, and he was "very aware" of the prior litigation. Tr. at 36–37. Leyh also acknowledged receiving a payment history from Martin Leigh on or about June 22, 2016, which showed that Plaintiff had not made a payment on the Note since 2009 and that she still owed over $300,000 on it. Tr. at 5, 8, 96. The Court nonetheless deems Leyh an untrustworthy witness on the whole.

## Discussion

Martin Leigh moves for sanctions on six grounds: (1) Leyh used fraudulent joinder (that is, knowingly filing frivolous claims to prevent removal to federal court) as an abusive litigation tactic; (2) Plaintiff and Leyh lacked a good-faith basis for alleging the Note was not in default and Plaintiff owed no debt under the Note; (3) Plaintiff and Leyh lacked a good-faith basis for alleging Martin Leigh owed a duty to investigate who owned the Note; (4) Plaintiff and Leyh lacked a good-faith basis to allege the Note was not transferred and could not be enforced; (5) Plaintiff and Leyh lacked a good-faith basis to allege Martin Leigh had no right or interest in the Note; and (6) Plaintiff's and Leyh's repeated challenges to the Note and Deed of Trust amount to harassment of Martin Leigh and have needlessly increased the cost of litigation.

The Court addresses each of these claims below, first by analyzing those paragraphs in the Verified Petition which Martin Leigh argues were alleged without adequate support, second by considering whether Plaintiff and Leyh had a good-faith basis to allege Martin Leigh had a duty to investigate, third by analyzing whether Plaintiff's claims against Martin Leigh were frivolous, and fourth by analyzing whether Plaintiff brought the claims against Martin Leigh for an improper purpose. Finally, the Court orders a variety of monetary sanctions.

# I. Plaintiff and Leyh made seven allegations in the Verified Petition that did not have evidentiary support when made and were not likely to have evidentiary support after further investigation.

Rule 55.03(c)(3) and Rule 11(b)(3) allow sanctions if factual contentions in a petition do not have evidentiary support when made and are not likely to have evidentiary support after further investigation. Martin Leigh contends the Court should sanction Plaintiff and Leyh because the Verified Petition makes multiple false factual statements.

## A. The allegations in paragraphs eight through ten merit sanctions.

Martin Leigh contends Plaintiff and Leyh should be sanctioned for the allegations in paragraphs eight, nine, and ten. These paragraphs allege:

> 8.     Plaintiff does not owe any money pursuant to the terms of the Note.
>
> 9.     Plaintiff is not in default on the Note.
>
> 10.    Plaintiff has not dishonored her Note.

V. Pet. ¶¶ 8–10.

These allegations are completely contrary to the Court's prior ruling as well as Plaintiff's payment history. In granting summary judgment for defendants on September 26, 2013, in consolidated Lawsuits I and II ("the September 26, 2013, summary judgment order"), the Court found:

> Plaintiff has defaulted and failed to fulfill her obligations under the Note and Deed of Trust by failing to pay the required amounts of monthly principal and interest under the Note when due from November 1, 2009 to the present. Plaintiff currently owes $293,165.15 in unpaid principal, plus unpaid interest, escrow, fees and costs which have continued to accrue since the default.

*Caranchini v. Bank of Am., N.A.*, 2013 WL 6987190, at *3.

17

Leyh argues[12] he was not collaterally estopped from pleading that Plaintiff was not in default.

This argument is without merit. Traditionally, the doctrine of collateral estoppel, or issue preclusion, precludes the same parties from relitigating issues which have been previously adjudicated between them. *See Oates v. Safeco Ins. Co. of Am.*, 583 S.W.2d 713, 719 (Mo. 1979). The Missouri Supreme Court has extended this doctrine to allow "strangers to the prior suit to assert collateral estoppel against parties to the prior suit to bar relitigation of issues previously adjudicated." *Id.* In determining whether collateral estoppel applies under such circumstances, a court applying Missouri law[13] considers four factors:

> (1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom estoppel is asserted was a party or was in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.

*James v. Paul*, 49 S.W.3d 678, 682 (Mo. 2001). Each case is analyzed on its own facts, and the doctrine is not applied where doing so would be inequitable. *Id.*

As will be made clear in detail below, it is not inequitable to preclude Plaintiff and Leyh from making these allegations. Thus, the Court looks to whether the four elements have been met.

---

[12] Leyh argues that the 2011 order denying remand and the 2012 dismissal did not preclude Plaintiff and Leyh from pleading that Plaintiff was not in default. Opp. at 11–14. However, Martin Leigh argues that the September 26, 2013, summary judgment order precluded Plaintiff and Leyh from pleading that Plaintiff was not in default. Supp. at 16 ("By ignoring fundamental concepts of candor to the tribunal, Plaintiff and her counsel sought to avoid collateral estoppel and the legal consequences of . . . *Caranchini v. Bank of Am., N.A.*, 4:10-cv-00672-DGK, 2013 WL 6987190 (W.D. Mo. Sept. 26, 2013)."). Leyh does not indicate whether he believes the September 26, 2013, summary judgment order precluded him from pleading that Plaintiff was not in default. Opp. at 11–14.

[13] In this diversity action, Missouri law governs whether collateral estoppel applies. *Hillary v. Trans World Airlines, Inc.*, 123 F.3d 1041, 1043 (8th Cir. 1997) (holding collateral estoppel in a diversity action is a question of substantive law controlled by state common law).

18

Plaintiff and Leyh meet the first element because the Court's September 26, 2013, summary judgment order found Plaintiff had defaulted on the Note by failing to pay the required amounts of principal and interest from November 1, 2009, to September 26, 2013. *Caranchini v. Bank of Am., N.A.*, 2013 WL 6987190, at *3. Whether Plaintiff defaulted on the Note by failing to pay the required amounts of principal and interest from November 1, 2009, to September 26, 2013, is the same issue presented in this case. Plaintiff meets the second and third elements because the Court already adjudicated the issue on its merits in a suit where she was a party. Finally, Plaintiff had a full and fair opportunity to litigate the issues in the prior suit, meeting the fourth element. Thus, collateral estoppel precludes Plaintiff and Leyh from pleading that Plaintiff was not in default on the Note from November 1, 2009, to September 26, 2013.

Even if Plaintiff and Leyh were somehow not estopped from making these allegations, since a federal court cannot grant a motion for summary judgment without a factual basis, the September 26, 2013, summary judgment order put Leyh on notice that they lacked evidentiary support and were not likely to have evidentiary support after further investigation. *See* Fed. R. Civ. P. 56(c) (requiring a party moving for summary judgment to support the claim with admissible evidence).

Further, regarding the allegation in paragraph nine, nothing happened after September 26, 2013, to give Leyh basis to allege Plaintiff was not in default at the time he filed the Verified Petition. During the hearing, Leyh acknowledged that on June 22, 2016, he received a payment history showing Plaintiff had not made a payment since 2009 and owed over $300,000 on the Note. Nothing in the record indicates Leyh had reason to believe something occurred after June 2016, such as Plaintiff making a payment or reaching an agreement with the Note holder, which might

have removed the default. Indeed, if Plaintiff had been removed from default, presumably Leyh would have known about it since he was representing Plaintiff at the time.

Leyh argues the allegation in paragraph nine was not false because whether a borrower is in default is a mixed question of law and fact. He contends that under Missouri law, a person who fails to make payments on their loan is not technically in default on their loan unless there is proof that a person with a right to enforce the note possesses the original note.[14] Tr. at 33–34. He argues that because it had not been proven who held the original Note at the time he filed suit, he was free to allege that Plaintiff was not in default. Tr. at 34.

Related to this theory, Leyh argued during the hearing that in paragraph nine he meant "default" in a technical sense as used in Missouri's Uniform Commercial Code. He contends that "until there's proof of a person with a right to enforce the note . . . there can be no default under the UCC. As counterintuitive as that may seem, that's the law." Tr. at 34. To support this, he cites Mo Rev. Stat. §§ 400.3-310, 400.3-602. In his post-hearing brief,[15] Leyh changes his position and argues that Missouri law has not addressed this question. He asserts,

> Missouri law has not addressed, in the context of preparation of the appointment of a foreclosure trustee, the effect of the interplay between proof of debt holder status under Article 3—proof that the entity claiming the right to enforce the note actually has the right to enforce the note and proof of default/dishonor. Read together, the relevant sections of Article 3 provide ample grounds to argue that the foreclosure trustee has a responsibility to fully establish the debt holder's authority to appoint it before moving forward to enforce a default.

---

[14] During the sanctions hearing, Leyh cited *Holm v. Wells Fargo Home Mortg., Inc.*, 514 S.W.3d 590 (Mo. 2017) as support for this theory. Tr. at 32–33, 69. But *Holm* provides no such support. In *Holm*, the Missouri Supreme Court upheld a trial court's holding in a wrongful foreclosure action that the homeowners were not in default because they were "making payments pursuant to a payment plan" and because the homeowners and Wells Fargo had entered into an "enforceable reinstatement agreement" prior to the foreclosure sale. *Holm*, 514 S.W.3d at 599.

[15] Although the Court ordinarily will not consider an argument raised for the first time in a post-hearing brief, it will discuss it here to ensure it has addressed all Leyh's arguments.

Post-Hr'g Br. at 14–15, ECF No. 122 (citing Mo Rev. Stat. §§ 400.3-310(b)(2), 400.3-412, "400.3-502(1)," and U.C.C. § 3-310 cmt. 3).

These arguments are without merit because both the legal and factual predicates for them are false. Leyh's attempt to define default as requiring proof that a person with a right to enforce the note possesses the original note is not supported by Missouri Law or by a non-frivolous argument for the extension of Missouri law. Under Missouri law, the terms of the contract define default. *See Bank of Mo. v. S. Creek Properties, LLC*, 455 S.W.3d 47, 54 (Mo. Ct. App. 2014) ("Both the deed of trust and the SBA loan provide Defendants would be in default if they failed to make a payment when due."); *see also*, *Dobson v. Mortg. Elec. Registration Sys./GMAC Mortg. Corp.*, 259 S.W.3d 19, 22 (Mo. Ct. App. 2008). Plaintiff's Note defines default as failure to "pay the full amount of each monthly payment on the date it is due." Adjustable Rate Note, Ex. C to Suggestions in Supp. of Mot. for Summ. J., ECF No. 32-3 at 6. Thus, Plaintiff was in default on the Note regardless of who possessed it or could enforce it against her. The authorities cited by Leyh, whether read together or separately, provide no support for Leyh's theory.[16]

Moreover, even if Leyh's theory had some basis in Missouri Law, it would not apply to the facts of this case. After Plaintiff executed the Note, Aegis transferred the Note and Deed of Trust

---

[16] Mo. Rev. Stat. § 400.3-310(b) and U.C.C. § 3-310(b) cmt. 3 provide that if a note is dishonored and held by someone other than the seller (that is, the original holder of the note), the seller cannot enforce the right to payment under the sales contract because the right to payment "is represented by the instrument which is enforceable by somebody else [i.e., the current note holder]." U.C.C. § 3-310(b) cmt. 3. Where, as here, "the seller sold the note . . . to a holder and [the seller] has not reacquired it after dishonor, the only right that survives is the right to enforce the instrument." *Id.* In other words, only the note holder, which in this case is Wilmington Trust with Nationstar as its attorney-in-fact can enforce the instrument. Aegis, as the seller and original holder of the Note, has no right of enforcement.

Section 400.3-412 which governs the obligations of the *issuer* of a note, cashier's check, or draft, that is, a *bank*, does not apply here.

Section "400.3-502(1)" does not exist. Leyh appears to be referring to § 400.3-502(a)(1), which applies when a note is payable on demand, and thus is not applicable here.

Finally, Section 400.3-602 concerns when payment is made on an instrument, which includes a note. It states, "an instrument is paid to the extent payment is made (i) by or on behalf of a party obliged to pay the instrument, and (ii) to a person entitled to enforce the instrument." Mo. Rev. Stat. § 400.3-602.

to Aegis Mortgage Corporation, which endorsed the Note in blank without recourse. Thus, whoever possessed the Note could enforce it. *See U.S. Bank, N.A. v. Smith*, 470 S.W.3d 17, 23 (Mo. Ct. App. 2015) (holding a note endorsed in blank is "enforceable by the bearer or holder of the note."). Though Leyh argues he had reason to believe that Martin Leigh did not possess the original Note as the agent for the Note holder, as discussed above, this argument has no basis in fact: Leyh knew when he filed the Verified Petition that Martin Leigh possessed the original because two days before filing the Verified Petition he viewed it in Martin Leigh's office with a flashlight and a magnifying glass. It stands to reason that if Leyh truly believed there was an issue with the Note's authenticity, he would have retained an expert witness to examine it, as he testified he had done in prior cases. He did not because he knew the Note was genuine and retaining an expert would be pointless. Similarly, Leyh's suggestion that, despite having no evidence the Note was a forgery, he was free to allege Plaintiff was not in default because he was "not a document examiner," is a meritless post-hoc rationalization. The Court concludes there is no legal or factual basis for Leyh's "unknown Note holder" theory as a defense for alleging Plaintiff was not in default.

Even if Leyh had some good-faith belief that Plaintiff was not in default as alleged in paragraph nine, the Court would still sanction him for the allegations in paragraphs eight and ten because they were baseless when made. Leyh concedes as much by his silence regarding these assertions. He has not identified specific evidentiary support for either claim nor explained how either claim was likely to have evidentiary support after further investigation. Nor could he: At the time he filed the Verified Petition, Leyh knew Plaintiff had not made a payment on the Note

22

since 2009 and owed over $300,000 on it, thus she owed money on the Note and had dishonored it.[17]

The Court concludes the allegations in paragraphs eight, nine, and ten did not have evidentiary support when made and were not likely to have evidentiary support after further investigation.  Accordingly, Plaintiff and Leyh are sanctioned under Rule 55.03(c)(3) and Rule 11(b)(3) for the allegations made in these paragraphs.

### B.    The allegations in paragraph thirty-four merit sanctions.

Martin Leigh also argues the allegations in paragraph thirty-four merit sanctions.  This paragraph states:

> 34.    Upon information and belief, the original Note was not transferred to Merrill Lynch Mortgage Investors Trust, Series 2006-HE5 as required in order to allow Merrill Lynch Mortgage Investors Trust, Series 2006-HE5 to enforce the instrument in accordance with Section 400.3-301 RSMo.[18]

V. Pet. ¶ 34.  These allegations are contrary to the Court's explicit ruling in the September 26, 2013, summary judgment order that "Plaintiff's loan was one of hundreds of loans included in the MLMI 2006-HE5 pool of assets," as well as the Court's implicit finding that the Note could be enforced against Plaintiff.  *Caranchini v. Bank of America, N.A.*, 2013 WL 6987190, at *3.

---

[17]  A note is dishonored when the borrower fails to make a payment on the note on the day it is due.  Mo. Rev. Stat. § 400.3-502(a)(3).

[18] Mo. Rev. Stat. § 400.3-301 states:

> "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 400.3-309 or 400.3-418(d).  A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

Leyh's defense appears to be that collateral estoppel did not operate to prevent his client from making these allegations.[19]  He also suggests that because the Note had changed hands many times, there was a chance it had been improperly transferred.  But, as discussed above, Plaintiff is estopped from relitigating the findings in the September 26, 2013, summary judgment order.  Thus, Plaintiff was estopped from pleading in this case that "the original Note was not transferred . . . as required in order to allow Merrill Lynch Mortgage Investors Trust, Series 2006-HE5 to enforce the instrument in accordance with Section 400.3-301 RSMo."

Even if Plaintiff was not estopped from making this allegation, the September 26, 2013, summary judgment order put Leyh on notice that the allegations in paragraph thirty-four lacked evidentiary support and were not likely to have evidentiary support after further investigation. There is no evidence in the record suggesting Leyh had any particular reason to think the Note had not been transferred to Merrill Lynch Mortgage Investors Trust, Series 2006-HE5 as required to enforce the Note in accordance with Missouri law.  Leyh's observation that in his experience such notes are often improperly transferred or the original documents lost, does not trump the Court's findings in its September 26, 2013, summary judgment order.

The Court holds Plaintiff and Leyh lacked a good-faith basis to allege the Note was not transferred and could not be enforced.  Accordingly, Plaintiff and Leyh are sanctioned under Rule 55.03(c)(3) and Rule 11(b)(3) for the allegations in paragraph thirty-four.

**C.      The allegations in paragraphs fourteen through sixteen merit sanctions.**

Martin Leigh also contends Plaintiff and Leyh should be sanctioned under Rule 55.03(c)(3) and Rule 11(b)(3) for the allegations in paragraphs fourteen, fifteen, and sixteen, which state:

---

[19] Leyh does not specifically argue that collateral estoppel does not apply to this ruling, but it appears that is his position.  Again, to ensure it has addressed all of Leyh's arguments, the Court analyzes whether collateral estoppel applies to this ruling.

14.     Defendants have no right or interest in or to the Promissory Note.

15.     Defendants are not and have never been the holder of the Note, and have never had a right to enforce the Note.

16.     As is explained further in significant detail, defendants are not and have not been the owner of the Note, and have no right to enforce the Note. Consequently, it is impossible for plaintiff to be in default to defendants.

V. Pet. ¶¶ 14–16.

The September 26, 2013, summary judgment order included a finding that the Note had been endorsed in blank. *Caranchini v. Bank of America, N.A.*, 2013 WL 6987190, at *3. During the hearing Leyh admitted that, on August 14, 2017, he inspected the Note in Martin Leigh's office. Thus, Leyh knew before he filed suit that Martin Leigh possessed the original Note as the agent of the loan servicer, Nationstar. Because the Note had been endorsed in blank and Nationstar possessed it, Leyh knew or should have known that as a matter of law Nationstar had the right to enforce the Note against his client. *See U.S. Bank, N.A. v. Smith*, 470 S.W.3d 17, 23 (Mo. Ct. App. 2015) (holding a note endorsed in blank is "enforceable by the bearer or holder of the [n]ote.").

As discussed above, Leyh's defense—that the Note had changed hands many times before, and despite viewing the Note in Martin Leigh's office he could not be sure it was the original because he was "not a document examiner,"—is meritless. The record plainly shows that Nationstar had an interest in the Note, it was the holder of the Note, and it had a right to enforce the Note.

Plaintiff and Leyh lacked a good-faith basis to allege in paragraphs fourteen, fifteen, and sixteen that Martin Leigh had no right or interest in the Note. These allegations did not have evidentiary support when made and were not likely to have evidentiary support after further investigation. Plaintiff and Leyh are sanctioned under Rule 55.03(c)(3) and Rule 11(b)(3) for the allegations made in these paragraphs.

## II.  Leyh lacked a good-faith basis to contend Martin Leigh owed a duty to investigate who held the Note.

Martin Leigh also contends Plaintiff and Leyh should be sanctioned because they lacked a good-faith basis for alleging Martin Leigh owed a duty to investigate who held the Note.  Leyh incorporated this alleged duty into the claim against Martin Leigh for negligent misrepresentation. *See* V. Pet. at ¶¶ 49–64 ("Martin Leigh's Breach of Duty"); V. Pet. at 77–78.

Rule 55.03 and Rule 11 authorize sanctions where legal contentions are not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."  Mo. Sup. Ct. R. 55.03(c)(2); *see also* Fed. R. Civ. P. 11(b)(2) (using virtually identical language).  Sanctions are appropriate where "a reasonable and competent attorney" would not believe the argument had legal merit.  *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003) (explaining the standard for imposing sanctions under Rule 11), or where a party "fail[s] to set forth colorable factual and legal arguments to support their claims." *Wolfchild v. Redwood County*, 824 F.3d 761, 771 (8th Cir. 2016).

Because the Court may not impose sanctions against a represented party for making a frivolous legal contention, the Court only considers whether sanctions on this ground are appropriate against Leyh.  Mo. Sup. Ct. R. 55.03(d)(2)(A); Fed. R. Civ. P. 11(c)(5).

No reasonable and competent attorney would believe that Martin Leigh owed a duty to Plaintiff to investigate who held the Note.  The 2012 dismissal held that the successor trustee on the Deed of Trust owes no duty to investigate who holds the Note, and collateral estoppel therefore barred Plaintiff from relitigating this issue.  In addition, when Leyh filed the Verified Complaint, Missouri law firmly established that—unless required by the deed of trust—a trustee on a deed of trust owes no duty to investigate who holds the note.  Finally, no emerging trend in the law

26

recognizing such a duty existed when Leyh filed the complaint, nor does any such trend currently exist. Leyh is therefore sanctioned under Rule 55.03(c)(2) and Rule 11(b)(2).

A. **Collateral estoppel barred Plaintiff from relitigating whether a successor trustee had a duty to investigate who held the Note.**

This Court held in the 2012 dismissal that the Deed of Trust's successor trustee does not have a duty to investigate who holds the Note. *Caranchini v. Bank of Am., N.A.*, 2012 WL 1833396, at *3. Collateral estoppel applies to this ruling and precluded Plaintiff from bringing any claim premised on Martin Leigh owing a duty to investigate who held the Note. Again, the Court finds here that it is equitable to apply the doctrine to this issue.

The first element of collateral estoppel, whether the issue in both cases is identical, is satisfied because the Court held in its dismissal order that the successor trustee has no duty to investigate who holds the Note. *Id*. That is the same issue presented here. Leyh's argument that the issue in this case is different because in the prior case Plaintiff was raising the issue in the context of a breach of fiduciary claim, Opp'n to Mot. for Sanctions at 14, ECF No. 84, is unavailing. While the *claim* in the prior case was different (a claim for breach of fiduciary duty instead of a claim for negligent misrepresentation), the legal *issue* presented in both cases is the same: whether a successor trustee has a duty to investigate who holds the Note.

The second element of collateral estoppel, whether the prior adjudication resulted in a judgment on the merits, is also satisfied. "Generally, a dismissal without prejudice is not a final appealable judgment." *Sexton v. Jenkins & Assocs., Inc.*, 152 S.W.3d 270, 273 (Mo. 2004). But a claim dismissed without prejudice for failure to state a claim where the plaintiff does not plead the claim further is deemed an adjudication of the claim on the merits by Missouri courts. *Mahoney v. Doerhoff Surgical Servs., Inc.*, 807 S.W. 2d 503, 506 (Mo. 1991). In the 2012 dismissal, the Court dismissed Plaintiff's claims against Kozeny & McCubbin for failure to state a claim, and

Plaintiff did not make any further claims against Kozeny & McCubbin. Thus, for collateral estoppel purposes, the prior dismissal operates as a judgment on the merits.

Finally, the third and fourth elements are present. Leyh does not dispute that Plaintiff was a party to the 2012 dismissal[20] or that she had a full opportunity in that case to litigate a trustee's duty to investigate. Opp'n at 12–15 (arguing the first and second elements are not satisfied, but not contesting the third and fourth elements).

Thus, Plaintiff was estopped from alleging Martin Leigh owed a duty to her to investigate who held the Note.

**B.     It was firmly established at the time Leyh filed the Verified Petition that a trustee on a deed of trust does not have a duty to investigate who holds the note.**

Leyh's argument that he should not be sanctioned because no Missouri appellate court has rejected this theory, Opp'n at 6–9, is unpersuasive for two reasons. First, Leyh is incorrect: A Missouri appellate court has rejected this theory. In *Spires v Edgar*, the Missouri Supreme Court considered whether a trustee on a deed of trust owes an independent duty, not stated in a deed of trust, to affirmatively investigate whether anything prevents foreclosure before initiating the foreclosure process. 513 S.W.2d 372, 378 (Mo. 1974). In *Spires*, the note holder informed the trustee that the borrower was delinquent and instructed the trustee to foreclose. The trustee then foreclosed. The borrower subsequently sued the trustee, alleging the trustee was liable for wrongful foreclosure because he was not delinquent on the note. The borrower claimed that, when the noteholder directs the trustee to foreclose, a trustee owes a duty to the borrower to conduct an

---

[20] Leyh's contention that collateral estoppel does not apply because Martin Leigh was not a defendant in Lawsuit I is meritless. There is no requirement the defendants be the same in both cases. *James v. Paul*, 49 S.W.3d 678, 682 (Mo. 2001) (stating the second element of collateral estoppel is "whether the party *against* whom estoppel is asserted was a party . . . to the prior adjudication") (emphasis added). In this case, Plaintiff was party to the prior adjudication, and so Martin Leigh may assert collateral estoppel against her.

28

investigation and find out whether the borrower is actually in default. *Id*. The Missouri Supreme Court rejected this theory, holding "[t]he duties and power of a trustee are fixed by the terms of the contract, namely, the deed of trust." *Id*. at 378 (citation omitted). After determining that the deed of trust contained no provision "for any investigation by the trustee," the *Spires* Court concluded that "in the absence of unusual circumstances known to the trustee,[21] [the trustee] may, upon receiving a request for foreclosure from the creditor, proceed upon that advice *without making any affirmative investigation* and without giving any special notice to the debtor." *Id*. at 378–79 (emphasis added).

Leyh cites *Spires* for the proposition that "Missouri law recognizes certain duties of a successor trustee" which "are not mentioned expressly in Borrower's Deed of Trust but Missouri law nevertheless demands them of a successor trustee." Opp'n at 17–18. While literally true, this is misleading: The unwritten duties *Spires* refers to are merely the general fiduciary duties of a trustee in a deed of trust to "act with complete integrity, fairness and impartiality." *Spires*, 513 S.W.2d at 378. These duties do not include a duty to undertake an investigation before foreclosing. The *Spires* court explicitly held as much when it wrote that allegations that a "trustee knew or should have known certain things by the exercise of reasonable diligence and inquiry are certainly *not equivalent* to allegations of actual knowledge . . . that the trustee actually knew of anything which should legally prevent the foreclosure when he was directed to act." *Id*. at 378 (emphasis added).

Second, even if the Missouri Supreme Court had not rejected this theory, just because an appellate court has not rejected a proposed theory of liability does not mean it has legal merit. This is particularly true where, as here, the facts and caselaw foreclose the theory. If the standard were

---

[21] Such "unusual circumstances known to the trustee" are limited to "actual knowledge" of the existence of something that would "legally prevent the foreclosure when [the trustee] was directed to act." *Spires*, 513 S.W.2d at 378.

29

as lenient as Leyh suggests, a litigant could file a patently frivolous claim repeatedly until it was heard by an appellate court and the appellate court rejected the claim on the merits, a process which could take years. Indeed, a savvy attorney who filed a frivolous claim but then dismissed it before the trial court ruled on the merits, or who did not appeal an adverse ruling, could evade appellate review indefinitely, effectively eliminating Rule 55.03(c)(2) and Rule 11(b)(2). The standard is, given the facts and circumstances, whether a reasonable and competent attorney would believe a theory has legal merit. On the facts and circumstances presented here, a reasonable and competent attorney would not.

## C. Nor was there an emerging trend in the law recognizing such a duty.

Leyh's argument that, at the time he filed suit, there was at least an emerging trend in the law to recognize such a duty is likewise unavailing. The authority Leyh cites in support of this proposition does not support it. Leyh quotes from the Missouri Practice Series Missouri Foreclosure Manual ("the Manual"). It states:

> In an era when home loans are regarded as a commodity, they are traded as such, often with faulty documentation. Assignments of deeds of trust are often missing from the record, so that, to a title examiner, it might appear that a successor trustee was appointed by a party who was not the holder of the indebtedness.
> . . .
> Trustees and their office staff can often avoid these problems by examining the title report at an early date and comparing its information with that received from the client. The most common problem to arise in the early stages is that the appointment of the successor trustee is executed by someone who does not appear to be the holder of the loan. If that is true, the appointment is invalid, and all acts done by the purported successor are also invalid, resulting in a void sale.

Steven Max Todd, 38 Missouri Practice Series, Missouri Foreclosure Manual § 3:15 (2020). This passage is an observation about potential best practices to avoid common problems in foreclosure. It does not say anything about trends in the law, much less acknowledge a new duty owed by trustees to borrowers to investigate the complete chain of title on a note. On the contrary, at the

30

time Leyh filed the Verified Petition, the Manual explicitly stated a trustee has no such duty to investigate.

> Where the deed of trust, in defining the trustee's duties, limits them to "giving notice of a foreclosure sale, selling the property at a public auction to the highest bidder, conveying the property by trustees' deed, and applying the proceeds of the sale," *the trustee has no duty to investigate the various transfers of the promissory note and deed of trust.*

Steven Max Todd, 38 Missouri Practice Series, Missouri Foreclosure Manual § 2:3 (2016) (emphasis added).  The Manual at the time even cited this Court's prior order denying remand in Lawsuit II as authority for the proposition that a trustee does not have a duty to investigate.  *Id.* at § 2:3 n.11.  The Manual's guidance on this point has not changed to this day.  *See* Steven Max Todd, 38 Missouri Practice Series, Missouri Foreclosure Manual § 2:3 (2020).

The other authority cited by Leyh is no more persuasive.  While testifying during the sanctions hearing, Leyh suggested for the first time that Nationstar's retention agreement with Martin Leigh gave rise to an affirmative duty on Martin Leigh's part to investigate the chain of title on the Note before seeking foreclosure.[22]  Tr. at 59–60, 64–66; Post-hearing Br. at 13, ECF No. 122.  Leyh argued the retention agreement demonstrated an evolving standard within the mortgage servicing industry recognizing a trustee's obligation to perform an independent chain of title verification.  In support, he quoted from a retention agreement between Nationstar and Martin Leigh in another case.  Tr. at 60–61.  The portion of the agreement to which Leyh referred, "[Section] 4.2 Legal Standing," states as follows:

> Firm shall not initiate a foreclosure, bankruptcy or other initial legal action unless it has independently confirmed a valid chain of title for both the mortgage and the note by review of all pertinent

---

[22] Although the Court ordinarily will not consider an argument raised for the first time at a hearing, it will discuss it here to ensure it has addressed all of Leyh's arguments.

> documents and verification of appropriate standing of the party in
> which Firm is initiating the legal proceeding. In order to accomplish
> this Nationstar expects Firm to review all documents for adequate
> note endorsements and proper chain of title. If any break in chain
> of title exists Firm is to notify Nationstar immediately.

Ex. A to Firm Retention Agreement § 4.2, Hearing Ex. R17 (emphasis added). Section 4.2 goes on to set out the timeframe in which Martin Leigh must notify Nationstar if it discovers certain problems. It ends by stating, "Once a fee is approved, title clearing activities shall proceed until resolved regardless of the status of any given action." This language is found within a portion of the document that explains what specific services Nationstar expects Martin Leigh will provide and sets caps on the payments for such services.

Assuming that identical language could be found in the retention agreement governing Defendants' relationship in this case, the Court sees nothing in it which gives rise to an affirmative duty owed by Martin Leigh to Plaintiff to investigate who held the Note. The fact that Nationstar requires a successor trustee it hires to check the chain of title before initiating any legal action— and thus incurring fees—suggests Nationstar does not want to waste money on legal actions where it lacks standing, nothing more. It is not evidence of an evolving standard in the mortgage industry. This is particularly true since there is no evidence in the record of what the industry standard was prior to 2017, or if other loan servicers and trustees use similar language in their retention agreements. It does not establish that Missouri law has evolved to hold that a successor trustee owes a new duty to a borrower, independent of the language in the deed of trust, to perform a complete investigation on a note's chain of title before foreclosing.

As no reasonable and competent attorney would believe Martin Leigh owed a duty to investigate who owned the Note before initiating foreclosure, or that Missouri law supported such an extension of law, the Court sanctions Leyh under Rule 55.03(c)(2) and Rule 11(b)(2).

32

### III. Leyh is sanctioned for knowingly bringing frivolous claims against Martin Leigh.

Related to the above, the Court holds sanctions should be imposed against Leyh under Rule 55.03(c)(2) and Rule 11(b)(2) because neither the negligent misrepresentation or the MMPA counts brought against Martin Leigh were warranted by existing law or a nonfrivolous extension of law on the facts of this case. Rule 55.03(c)(2) and Rule 11(b)(2) authorize sanctions where claims are not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Mo. Sup. Ct. R. 55.03(c)(2); *see also* Fed. R. Civ. P. 11(b)(2) (using virtually identical language). Sanctions are appropriate where "a reasonable and competent attorney" would not believe the argument had legal merit, *Coonts,* 316 F.3d at 753, or where a party "fail[s] to set forth colorable factual and legal arguments to support their claims." *Wolfchild*, 824 F.3d at 771. The Notes of the Advisory Committee on the Federal Rules of Civil Procedure provide some guidance in determining whether an argument is "nonfrivolous" under Fed. R. Civ. P. 11(b)(2):

> [e]stablishes an objective standard, intended to eliminate any empty-head pure-heart justification for patently frivolous arguments. However, the extent to which a litigant has researched the issues and found some support for its theories even in minority opinions, in law review articles, or through consultation with other attorneys should certainly be taken into account in determining whether paragraph (2) has been violated. Although arguments for a change of law are not required to be specifically so identified, a contention that is so identified should be viewed with greater tolerance under the rule.

Fed. R. Civ. P. 11(b) advisory committee's note to 1993 amendment. The advisory committee's notes are instructive as to whether an argument is "nonfrivolous" under both Rule 11 and Mo. Sup. Ct. R. 55.03. *Dillard*, 775 S.W.2d at 186 ("Rule 55.03 is substantially the same as Federal Rule 11, and it is appropriate to look to that provision for construction.").

Because Rule 55.03(d)(2)(A) and Rule 11(c)(5) prohibit the Court from imposing sanctions against a represented party for bringing a frivolous claim, the Court only considers whether sanctions are appropriate against Leyh.

### A. The negligent misrepresentation claim against Martin Leigh was not warranted by existing law or a nonfrivolous extension of law.

Count I brings a negligent misrepresentation claim against Martin Leigh. Under Missouri law, there are five elements to a negligent misrepresentation claim. *M & H Enters. v. Tri–State Delta Chems., Inc.*, 35 S.W.3d 899, 904 (Mo. Ct. App. 2001). The two requirements relevant here are: (1) whether "the speaker supplied information in the course of [its] business because of some pecuniary interest;" and (2) whether this information was false "due to the speaker's failure to exercise reasonable care or competence in obtaining or communicating this information . . . ." *Id.* (citation omitted).

The Verified Petition alleges that Martin Leigh, the speaker, provided information to Plaintiff in the Appointment of Successor Trustee that Wilmington Trust was the Note holder and was acting under the authority of the Deed of Trust to appoint Martin Leigh as successor trustee. V. Pet. ¶ 78. The Verified Petition contends this statement is false because "the original Note was not transferred to Merrill Lynch Mortgage Investors Trust, Series 2006-HE5 as required in order to allow Merrill Lynch Mortgage Investors Trust, Series 2006-HE5 to enforce the instrument in accordance with Section 400.3-301 RSMo." V. Pet. ¶ 34. Leyh also argues information in the Appointment of Successor Trustee is false because Nationstar subsequently "insisted *it* was the debt holder, even if wrongfully in possession of the Note, and that *it* was legally entitled to enforce the associated Deed of Trust by appointment. However, Martin Leigh was appointed by Wilmington, not Nationstar." Opp'n at 11. Whether Wilmington or Nationstar was the Note holder is important, Leyh contends, because it raises the question whether Martin Leigh's

appointment as successor trustee was valid, and thus whether all acts done by it as the successor trustee are also invalid. *Id.* at 11–12. Leyh argues the allegedly false statements in the Appointment of Successor Trustee gave rise to a colorable claim of negligent misrepresentation, which he dubs the "appointment theory" of liability. Tr. at 56. Even if this theory were not colorable, he argues, "there are colorable reasons why binding law could come to exist in [Plaintiff's] favor," and "a credible argument can be made that Missouri law will develop in that direction." Opp'n at 9–10.

Given the record in this case, no reasonable and competent attorney would believe the Appointment of Successor Trustee contained any falsehoods about the validity of Martin Leigh's appointment on which to base a negligent misrepresentation claim. As discussed above, the Court previously ruled that the Note was transferred to MLMI Trust Series 2006-HE5, Leyh was aware of this ruling, and Plaintiff was estopped from relitigating it. Further, the Appointment of Successor Trustee plainly states: (1) Wilmington Trust is the Note holder; (2) Wilmington Trust was appointing Martin Leigh as successor trustee under the Deed of Trust; and (3) Nationstar executed the document as Wilmington Trust's attorney-in-fact. Appointment of Successor Trustee, V. Pet. Ex. 4 at 52–53, ECF No. 9-6.

Nationstar's purported comments about it being the debt holder do not support such a claim either. Nationstar made the statements while arguing *in the alternative* in its brief in support of its motion for summary judgment on Plaintiff's negligent misrepresentation claim.[23] Nationstar was not asserting it was, in fact, the owner of the Note, nor was it suggesting Wilmington Trust lacked authority to appoint Martin Leigh as successor trustee. Nationstar was observing that even if the Note had not been properly transferred to MLMI Trust Series 2006-HE5, it still had the legal right

---

[23] The negligent misrepresentations claim brought against Martin Leigh is a mirror image of the negligent misrepresentation claim brought against Nationstar. *Compare* V. Pet. ¶¶ 71–83, *with* V. Pet. ¶¶ 84–96.

to enforce the Note because it possessed the Note and the Note was endorsed in blank. Suggestions in Supp. of Mot. for Summ. J. at 11, ECF No. 32. Thus, "[b]y virtue of its mere possession of the Note, Nationstar had the authority to appoint Martin Leigh as the Successor Trustee under the Deed of Trust." *Id*.

Leyh's fallback position, that binding law could come to exist supporting his position, is unavailing. Leyh cites three sources of support of this assertion: (1) the excerpt from the Manual authored by Stephen Todd ("Mr. Todd"); (2) Nationstar's retention agreement with Martin Leigh; and (3) discussions he purportedly had with two experts in Missouri foreclosure law, Mr. Todd and Dale Whitman. *See* Tr. at 62–64.

None of these three, either individually or collectively, are persuasive. As discussed above, the Manual and retention agreement do not support this position. As for Leyh's conversations with these experts, Leyh testified that that he spoke with these experts at some point; he did not testify that he actually discussed his theory that Martin Leigh's appointment was invalid in this case, or that they embraced it. Thus, Leyh has provided no information about what, if anything, of relevance to the pending motion the three discussed. The Court is confident, however, that if these experts had embraced his view that Martin Leigh's appointment in this case was invalid, Leyh would have communicated this to the Court.

The Court also notes Leyh has not provided any admissible evidence or expert affidavits suggesting Martin Leigh's appointment was invalid. Granted, during the sanctions hearing, Leyh provided an affidavit from Mr. Todd that was submitted in a wrongful foreclosure action, *Zahnter v. Central Nat'l Bank*, Case No. 10CY-CV13777 (Clay Cnty. Cir. Ct. Nov. 28, 2012). But this affidavit demonstrates Martin Leigh's appointment here was lawful. Mr. Todd noted, "In order for an appointment of successor trustee to be effective it must be made by the owner of the note,

*or in the name of owner of the note by its authorized agent*." Todd Aff. ¶ 9, Hr'g Ex. R16 (emphasis added). That is exactly what happened here: Nationstar executed the Appointment of Successor Trustee as Wilmington Trust's attorney-in-fact, that is, its agent.

Consequently, neither the Manual, retention agreement, nor purported conversations with experts are credible evidence that Leyh researched the legal issues in good faith and found support for this lawsuit before filing suit. On the contrary, Leyh's various responses to the motion for sanctions feel like extended post-hoc rationalizations.

Leyh also points to orders from nine Missouri state court cases wherein Leyh brought a claim against a successor trustee for either breach of fiduciary duty or negligent misrepresentation premised on his appointment theory, a defendant moved for summary judgment or to dismiss, and the court did not grant the motion. These orders are not apropos of anything. One was decided on procedural grounds, one was a summary judgment motion brought by a defendant who was not the successor trustee (Leyh had already dismissed the successor trustee), and none of the others explained the court's reasoning.[24] In fact, three are merely docket entries.[25] Consequently, these cases do not offer meaningful support for Leyh's claim that Missouri courts have found these claims colorable.

---

[24] Plaintiff's Counsel cited to *McClain v. Landmark Equity Grp.*, Case No. 1716-CV03534 (Jackson Cnty. Cir. Ct. Sept. 22, 2017); *Odueko v. Millsap & Singer, P.C.*, Case No. 1616-CV25194 (Jackson Cnty. Cir. Ct. July 24, 2017); *Stagner v. Wells Fargo Bank, N.A.*, Case No. 16RY-CV00249 (Ray Cnty. Cir. Ct. Oct. 27, 2016); *Hillebert v. Kozeny & McCubbin*, Case No. 1516-CV08004 (Jackson Cnty. Cir. Ct. Sept. 21, 2015); *Daily v. Millsap & Singer, P.C.*, Case No. 14AE-CV01101 (Platte Cnty. Cir. Ct. Oct. 15, 2014); *Hartigan v. Handy*, Case No. 14CY-CV02361 (Phelps Cnty. Cir. Ct. Sept. 5, 2014); *Pulliam v. CSM Tr. Foreclosure Corp.*, Case No. 1416-CV05207 (Jackson Cnty. Cir. Ct. Aug. 13, 2014); *Hadley v. Millsap & Singer, P.C.*, Case No. 1316-CV16429 (Jackson Cnty. Cir. Ct. Feb. 24, 2014); *Cuda v. Bank of N.Y.*, Case No. 11 CY-CV04386 (Clay Cnty. Cir. Ct. Jan 14, 2014). *Hadley* was decided on procedural grounds. In *Zahnter v. Central Nat'l Bank*, Case No. 10CY-CV13777 (Clay Cnty. Cir. Ct. Nov. 28, 2012), Leyh voluntarily dismissed the successor trustee, and the non-successor trustee defendant brought a summary judgment motion.

[25] *Daily*, Case No. 14AE-CV01101; *Hartigan*, Case No. 14CY-CV02361; *Cuda*, Case No. 11 CY-CV04386.

Leyh knew, or should have known, when he filed the Verified Petition that the information alleged in it was false. He also knew, or should have known, that the negligent misrepresentation claim was not warranted by existing law or a nonfrivolous argument for extending, modifying, or reversing existing law.

## B. The MMPA claim brought against Martin Leigh was similarly not warranted by existing law or a nonfrivolous extension of law.

Plaintiff's MMPA claim against Martin Leigh stems from its allegedly (1) concealing from Plaintiff that Nationstar allegedly lacked the right to foreclose, (2) failing to make a reasonable inquiry that would have revealed that Nationstar lacked the right to foreclose, and (3) charging unfair fees because they exceeded those allowed by investor and servicer guidelines. V. Pet. ¶¶ 99, 106–108, 111–12, 114–16. The MMPA makes unlawful the use of "unfair practice or the concealment . . . of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.025.1.

At the time Leyh filed the Verified Petition, the Eighth Circuit, applying Missouri law, had ruled that the MMPA did not apply to the trustee-borrower relationship. The Eighth Circuit held that where, as here, a trustee on a deed of trust forecloses due to a borrower's default, the trustee is acting in a "narrow, contingent role" which is not connected with the "sale" of the loan. *Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 895 (8th Cir. 2014). Thus, a borrower cannot bring an MMPA against a successor trustee for foreclosing pursuant to the terms of the deed of trust. *Id.* at 895–96 (finding "no reasonable basis in fact and law" for a borrower's MMPA claim against trustee to a deed of trust for allegedly making false and misleading statements in connection with the foreclosure); *see also Dedrick v. Fed. Nat'l Mortg. Assoc.*, Case No. 12-CV-1425-SOW, 2013 WL 12146528, at *3 (W.D. Mo. May 7, 2013) (noting it was "firmly established" that an MMPA

claim could not be brought against a successor trustee for allegedly concealing an absence of a legal right to foreclose on a loan).

Leyh's attempt to persuade the Court to dismiss *Wivell* as "instructive . . . at most," Opp'n at 9, is unavailing. *Wivell* is binding authority on this issue. Even if the *Wivell* decision were not binding on the Court, the Court would follow its holding as persuasive authority. *Wivell* is a well-reasoned, unanimous decision by a panel of experienced jurists who were applying Missouri law and predicting how the Missouri Supreme Court would rule if it were deciding the case. 773 F.3d at 897 (acknowledging the court's role in the case "is to interpret state law, not fashion it," and "[w]here the Missouri Supreme Court has not spoken, we must predict how the court would rule").

Leyh's suggestion that the negligent misrepresentation claim and the MMPA claim cannot be frivolous because the Missouri Supreme Court has not yet rejected them is also unavailing. Opp'n at 6–7 ("It will take a Missouri Supreme Court decision to provide a binding answer on these claims in this Court. . . Because the Missouri Supreme Court has not yet spoken, binding law does not exist." (citations omitted)). The Court rejected a similar argument—that Leyh should not be sanctioned because no Missouri appellate court has rejected his theory that a trustee has an affirmative duty to investigate who holds the note before foreclosing—in Section II.B. above. Similar reasoning applies here.

First, as a threshold matter, the Court has reason to believe that the Missouri Supreme Court would reject these theories. Second, just because the Missouri Supreme Court has not rejected a given theory of liability does not mean it has legal merit. This is particularly true where, as here, the facts of the case and existing caselaw foreclose the theory. A reasonable and competent attorney would not believe that either a negligent misrepresentation or an MMPA claim could be brought against Martin Leigh here.

Finally, the Court rejects Leyh's intimation that either the negligent misrepresentation or MMPA claims were warranted as a nonfrivolous argument for the extension of existing law or the establishment of new law. Leyh suggests these claims were not frivolous because the Missouri Supreme Court could someday hold that a trustee on a deed of trust can be sued for negligent misrepresentation or rule that the MMPA applies to a trustee on a deed of trust. Opp'n at 7, 9–10. Of course, it is *possible* that the Missouri Supreme Court will someday revisit existing caselaw and recognize a previously unrecognized cause of action. But a mere hope for a future change in the law does not meet the standard for a nonfrivolous argument for the reversal of existing law or the establishment of new law. "Some support" is required. Fed. R. Civ. P. 11(b) advisory committee's note to 1993 amendment. The Court also notes that Leyh did not state in the Verified Petition that it was seeking to extend, modify, or reverse existing law, or establish new law. While there was no requirement that he do so, that he failed to do so despite his plain attempt to impose a new legal duty on successor trustees hurts his contention that this lawsuit was a nonfrivolous attempt to change the law.

Accordingly, the Court holds the negligent misrepresentation and MMPA claims were frivolous. The Court sanctions Leyh under Rule 55.03(c)(2) and Rule 11(b)(2).

## IV. Leyh is sanctioned for bringing the claims against Martin Leigh for an improper purpose.

The Court also sanctions Leyh for bringing the claims against Martin Leigh for an improper purpose. *See* Mo. Sup. Ct. R. 55.03(c)(1); Fed. R. Civ. P. 11(b)(1). The record demonstrates Leyh brought these frivolous claims against Martin Leigh to gain a perceived tactical advantage by preventing removal to federal court. Filing a frivolous claim against an in-state successor trustee to defeat diversity appears to be Leyh's modus operandi when representing mortgagors against

lenders. Leyh explained his decision to sue one such successor trustee, Millsap & Singer (a Missouri citizen), for breach of fiduciary duty and violations of the MMPA, as follows:

> I sue—I've been suing in the foreclosure arena for eight, ten years. I'm surprised it's only 20 times that Millsap has been on the other end; Kozeny & McCubbin, Southlaw, Shapiro & Weisman, and Kreisman & Mock, and all the variations of the Shapiro firm. I don't want your Honor to think I'm picking on Millsap. I spread it around. So there's that. Millsap is an in-state defendant, is a Missouri defendant. The typical case, Judge, I have a client who wants to stay in their "home" —or excuse me – "house." Okay? Kid's going to graduate from school in a year or two, and they don't want to be evicted before then. I sue the servicer, Bank of America, Wells Fargo, maybe the Wall Street Trust as well in this case, and then in-state defendant who's the successor trustee. Why do I do that? Because it's like a welcome mat to the State Court of courthouse [sic]. I can stay in State Court. What happens when I'm in State Court, Judge? I get to do what I'm doing right now, actually look a judge in the eye, stand in the well of the courtroom, and have the Court listen to an argue [sic]. I can't do that in Federal Court. Federal Court is all paper. It's all—you know, the clerks decide things. So when my loan modification comes in for my client, they get to keep the house. They get the cash. And I get all kinds of results from large six-figure settlements, seven-figure settlements, lots of loan modifications. I then exit the house and wipe my feet on the welcome mat that either Kozeny or Millsap & Singer placed and I dismiss the trustee because my client has what it wants, to stay in the house. So that's the end game.

Hr'g Tr. from *Stagner v. Wells Fargo Bank, N.A.*, Case No. 16RY-CV00249 at 25–26 (Ray Cnty. Cir. Ct. March 23, 2018), Hr'g Ex. P7. Leyh does not even attempt to argue he has a colorable claim against the successor trustee. He admits he sues the successor trustee to prevent removal, and that once he extracts a settlement from the other defendants, he dismisses the claims against the successor trustee.

Leyh's history litigating fourteen similar cases in this Court corroborates that his statement to the *Stagner* court was a candid admission, not a misstatement. In each of these cases, Leyh brought a combination of claims in state court for breach of fiduciary duty, violation of the MMPA, or negligent representation against the in-state successor trustee. The defendants then removed to

41

this Court, alleging fraudulent joinder.  The Court then found fraudulent joinder or dismissed the

complaint against the in-state successor trustee in seven of these cases.[26]  In another six,[27] Leyh

---

[26] Notice of Removal, *McCormies v. PennyMac Loan Services, LLC*, Case No. 5:18-cv-06003-GAF (W.D. Mo. Jan. 9, 2018), ECF No. 1 (removing to federal court alleging the plaintiff fraudulently joined the Missouri successor trustee); Order, Case No. 5:18-cv-06003-GAF (W.D. Mo. May 31, 2018), ECF No. 30 (holding that claims against the Missouri successor trustee for violation of the MMPA, breach of fiduciary duty, and negligent misrepresentation were frivolous and therefore the plaintiff fraudulently joined the Missouri successor trustee); Notice of Removal, *Bowen v. The Bank of New York Mellon*, Case No. 5:13-cv-06070-BCW (W.D. Mo. May 22, 2013), ECF No. 1 (removing to federal court alleging the plaintiff fraudulently joined the Missouri successor trustee); Order, Case No. 5:13-cv-06070-BCW (W.D. Mo. Aug. 30, 2013), ECF No. 45 (holding that claims against the Missouri successor trustee for breach of fiduciary duty and negligent misrepresentation were frivolous and therefore the plaintiff fraudulently joined the Missouri successor trustee); Notice of Removal, *Phillips v. HSBC Bank USA, N.A.*, Case No. 4:13-CV-00428-BP (W.D. Mo. Apr. 29, 2013), ECF No. 1 (removing to federal court alleging the plaintiff fraudulently joined the Missouri successor trustee), and Order, Case No. 4:13-CV-00428-BP (W.D. Mo. Oct. 21, 2013), ECF No. 41 (holding that claims against the Missouri successor trustee for violations of the MMPA and for breach of fiduciary duty were frivolous and concluding the plaintiff fraudulently joined the Missouri successor trustee); Notice of Removal, *Dedrick v. Fed. Mortg. Ass'n*, Case No. 4:12-CV-01425-DGK (W.D. Mo. Dec. 6, 2012), ECF No. 1 (removing to federal court alleging the plaintiff fraudulently joined the Missouri successor trustee); Order, Case No. 4:12-CV-01425-DGK (W.D. Mo. May 7, 2013), ECF No. 40 (holding that claims against the Missouri successor trustee for breach of fiduciary duty and violation of the MMPA were not colorable and that the plaintiff fraudulently joined the Missouri successor trustee); Notice of Removal, *Gulotta v. Bank of America, N.A.*, Case No. 4:12-CV-01335-BCW (W.D. Mo. Nov. 5, 2012), ECF No. 1 (removing to federal court alleging the plaintiff fraudulently joined the Missouri successor trustee); Amended Order, Case No. 4:12-CV-01335-BCW (W.D. Mo. Aug. 30, 2013), ECF No. 59 (holding that claims against the Missouri successor trustee for a declaratory judgment, breach of fiduciary duty, and for violation of the MMPA were not colorable and therefore the plaintiff fraudulently joined the Missouri successor trustee); Notice of Removal, *Royer v. Fed. Nat'l Mortg. Ass'n*, Case No. 5:12-CV-06105-BCW (W.D. Mo. Sept. 26, 2012), ECF No. 1 (removing to federal court alleging the plaintiff fraudulently joined the Missouri successor trustee); Order, Case No. 5:12-CV-06105-BCW (W.D. Mo. Sept. 26, 2013), ECF No. 76 (finding that the plaintiff had fraudulently joined the Missouri successor trustee to defeat diversity jurisdiction as the claims against the Missouri successor trustee— for breach of fiduciary duty and violation of the MMPA—failed to state a claim for relief); Notice of Removal, *Waddell v. Millsap & Singer P.C.*, Case No. 4:12-CV-04243-DW (W.D. Mo. August. 30, 2012), ECF No. 1 (removing to federal court alleging that the plaintiff fraudulently joined the successor trustee); Order, Case No. 4:12-CV-04243-DW (W.D. Mo. Feb. 1, 2013), ECF No. 27 (granting the successor trustee's motion to dismiss for failure to state a claim).

[27] Notice of Removal, *Hopper v. PNC Bank*, Case No. 3:13-CV-5095-REL (W.D. Mo. June 28, 2013), ECF No. 1 (removing to federal court alleging that the plaintiff fraudulently joined the successor trustee); Notice of Rule 41(a)(1) Dismissal, Case No. 3:13-CV-5095-REL (W.D. Mo. Aug. 9, 2013), ECF No. 18 (voluntarily dismissing complaint against successor trustee while successor trustee's motion to dismiss for failure to state a claim remained pending); Notice of Removal, *Binkley v. PNC Bank, N.A.*, Case No. 5:13-CV-06045-DW (W.D. Mo. Mar. 26, 2013), ECF No. 1 (removing to Federal Court alleging fraudulent joinder); Notice of Voluntary Dismissal, Case No. 5:13-CV-06045-DW (W.D. Mo. Apr. 4, 2013), ECF No. 5; Notice of Removal, *McCance v. Bank of Am.*, Case No. 5:13-CV-06023-HFS (W.D. Mo. Jan. 31, 2013), ECF No. 1 (removing to federal court alleging fraudulent joinder); Notice of Filing Rule 41(a)(1) Dismissal, Case No. 5:13-CV-06023-HFS (W.D. Mo. Sept. 17, 2013), ECF No. 47 (dismissing complaint against successor trustee while successor trustee's motion to dismiss the complaint for failure to state a claim and the plaintiff's motion for remand were pending); Notice of Removal, *DeBarthe v. JPMorgan Chase Bank, N.A.*, Case No. 4:12-CV-01128-HFS (W.D. Mo. Sept. 4, 2012), ECF No. 1 (removing to federal court alleging fraudulent joinder); Stipulation of Dismissal, Case No. 4:12-CV-01128-HFS (W.D. Mo. Aug. 20, 2013), ECF No. 30 (dismissing all claims while successor trustee while successor trustee's motion to dismiss the complaint against it for failure to state a claim remained pending); Notice of Removal, *DeBarthe v. JPMorgan Chase Bank, N.A.*, Case No. 4:12-CV-00856-GAF (W.D. Mo. July 6, 2012), ECF No. 1 (removing to federal court alleging fraudulent joinder); Notice of Voluntary Dismissal, Case No. 4:12-CV-00856-GAF (W.D. Mo. July 6, 2012), ECF No. 5; Notice of

voluntarily dismissed the claims against the successor trustee after the defendants removed the case.[28]

Deliberately filing frivolous claims to prevent removal to federal court is sanctionable conduct. *Dunbar v. Wells Fargo Bank, N.A.*, 709 F.3d 1254, 1258–59 (8th Cir. 2013) (imposing sanctions under Rule 11). The facts in *Dunbar* are similar to those here: Wells Fargo held the notes on a group of Minnesota homeowners' mortgages. *Id*. at 1256, 1256 n.3. After the homeowners defaulted, Wells Fargo initiated foreclosure proceedings after the homeowners defaulted pursuant to Minnesota's non-judicial foreclosure statute. *Id*. The homeowners then sued Wells Fargo in state court, arguing Minnesota law did not give Wells Fargo the authority to foreclose. *Id*. To prevent removal, the homeowners' attorney also included the law firm conducting some of the foreclosures, which was a Minnesota citizen, based on a previously rejected "show me the note" legal theory. *Dunbar v. Wells Fargo Bank, N.A.*, 853 F. Supp. 2d 839, 844 (D. Minn. 2012). Defendants removed the case to federal court arguing fraudulent joinder, and the homeowners argued the federal court did not have jurisdiction due to lack of complete diversity. *Id*. at 843–44. The district court held that the homeowner's attorney fraudulently joined the law firm to defeat diversity jurisdiction and sanctioned the homeowners' attorney, in part for bringing frivolous claims to defeat diversity. *Id.* at 844 (discussing fraudulent joinder); *Dunbar v. Wells Fargo Bank, N.A.*, Civil No. 11-3683 (DSD/FLN), 2012 WL 1394666

---

Removal, *Ball v. The Bank of N.Y. as Trustee for CWALT, Inc.*, Case No. 4:12-CV-00144-NKL (W.D. Mo. Jan. 30, 2012), ECF No. 1 (removing to federal court alleging that the plaintiff fraudulently joined the successor trustee); Notice of Voluntary Dismissal, Case No. 4:12-CV-00144-NKL (W.D. Mo. Apr. 12, 2012), ECF No. 39 (voluntarily dismissing complaint against trustee while trustee's motion to dismiss the complaint for failure to state a claim remained pending).

[28]*Hayes v. U.S. Bank*, Case No. 4:12-CV-01190-HFS, is the only exception. In *Hayes*, the defendants removed to this district alleging fraudulent joinder. Notice of Removal, ECF No. 1, Case No. 4:12-CV-01190 (W.D. Mo. filed Sept. 21, 2012). However, the court remanded because the defendants did not all consent to removal. Remand Order, Case No. 4:12-CV-01190 (W.D. Mo. Jan. 9, 2013) ECF No. 14.

(D. Minn. April 23, 2012) (imposing sanctions).  The Eighth Circuit affirmed the imposition of sanctions, noting the homeowners' attorney's "attempts to avoid federal court by engaging in fraudulent joinder in order to then challenge federal subject matter jurisdiction are unacceptable." *Dunbar*, 709 F.3d at 1258–59.

The district court sanctioned the same attorney in another case for similar behavior.  The Court of Appeals summarized the attorney's actions in that case as follows.

> Butler [the attorney] . . . gins up a dozen or so claims against a dozen or so defendants grounded mostly on the show-me-the-note theory; he improperly packages these claims into a single state-court action; and he fraudulently joins a single nondiverse defendant (typically a law firm that represented one of the lenders in foreclosure proceedings) in an attempt to block removal to federal court.  The defendants generally remove the cases to federal court, and Butler then moves to remand.  If the judge denies Butler's motion, he might "remand" the case himself by voluntarily dismissing it and refiling it in state court within a day or two, thereby starting the process all over again.  Butler might also "judge shop" in the same manner; if he does not like his chances before a particular federal judge, he might voluntarily dismiss his case, promptly refile it in state court, and start the process all over again.  To hide his conduct, Butler will reorder the names of the plaintiffs or substitute a new plaintiff for one of the old plaintiffs, so that the refiled case will have a different caption.
>
> . . .
>
> In his briefs to this court Butler similarly omits any discussion of the recent cases rejecting his "show me the note" theory and jurisdictional arguments, and he makes no attempt to distinguish or argue against them.  He simply represents that Minnesota law requires a foreclosing mortgagee to possess the note and that the district court lacked jurisdiction to hear the case.  This is troubling.  Butler himself has argued several cases in which we rejected his "show me the note" theory under Minnesota law. . . .  His deliberate attempt to ignore these cases suggests that he has the intention of deceiving or misleading the court into ruling in his favor.

44

*Welk v. GMAC Mortgage, LLC*, 720 F.3d 736, 738–39 (8th Cir. 2013). The present case is analogous to *Welk*, and the Court holds Leyh should be sanctioned for filing frivolous claims to prevent removal.

To be clear, the Court is *not* holding that if an attorney in good faith brings a claim against a party which prevents removal, and this claim is later determined to lack a colorable basis in law or fact, the attorney should be sanctioned under Rule 55.03(c)(1) or Rule 11(b)(1). There must be something more, such as evidence that the attorney knew, or should have known, when bringing the claim that it was frivolous and yet brought it anyway merely to prevent removal. In this case, there is substantial evidence of bad faith, namely that Leyh knowingly and intentionally filed frivolous claims against Martin Leigh solely to prevent removal and delay foreclosure. The record shows Leyh brought these claims despite being aware of binding rulings in three prior cases involving the same Plaintiff which foreclosed these claims, pled facts in a verified complaint which are patently untrue, pled claims which were bereft of legal merit (even if the Court had not already issued rulings foreclosing such claims), and acted consistent with his admitted modus operandi in litigating such cases.

## V. The Court imposes monetary sanctions on Plaintiff and Leyh.

The sanction a court may impose under Rule 55.03 or Rule 11 is "limited to that which is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated." Mo. Sup. Ct. R. 55.03(d)(2); Fed. R. Civ. P. 11(c)(4) (using virtually identical language). A sanction may include a nonmonetary directive, an order to pay a penalty into the court, and an order directing payment of part or all reasonable attorney's fees directly resulting from the violation. *Id.*; Martha Charepoo, 15 Missouri Practice Series, Civil Rules Practice § 55.03:4 (2020) (noting that attorney's fees may be awarded if appropriate to deter violations of Rule 55.03).

45

A court may not impose sanctions against a represented party for bringing a frivolous claim or making a frivolous legal contention. Mo. Sup. Ct. R. 55.03(d)(2)(A); Fed. R. Civ. P. 11(c)(5). When a represented party brings a frivolous claim or makes a frivolous legal contention, the sanction falls solely on the attorney. *Id*.

## A. The Court sanctions Plaintiff $5,000.

Although much of this order has focused on Leyh as Plaintiff's Counsel, Plaintiff also violated Rule 55.03 and Rule 11 by making false factual allegations in the Verified Complaint, and the Court sanctions her accordingly. In determining a sanction sufficient to deter similar conduct by Plaintiff or others in the future, the Court notes that the sanction should include payment of Martin Leigh's legal fees in this case as well as a substantial monetary penalty. Hence, the Court could impose a monetary penalty on Plaintiff in excess of $100,000. However, based on the Court's interactions with Plaintiff, the Court has reason to believe that Plaintiff's physical and mental health has severely deteriorated recently and that she has a limited ability to pay a monetary sanction. *See, e.g.*, Email Correspondence, ECF No. 107; Mot. for Stay, ECF No. 89. Therefore imposing a large monetary sanction on Plaintiff would seem to be a cruel and pointless exercise.

Although Rule 55.03 and Rule 11 also authorize a court to impose a nonmonetary directive, such as restricting a litigant's ability to file future lawsuits, the Court has already imposed this restriction on Plaintiff. *See* Ord. Granting Summ. J. at 7-8, ECF No. 60. Hence, under the circumstances, the Court holds an appropriate sanction is to order Plaintiff to pay Martin Leigh $5,000—which the Court concludes based upon its interactions with Plaintiff is the most she can afford—to partly reimburse it for its legal expenses.

**B.     The Court sanctions Leyh and Gregory Leyh, P.C. the amount of Martin's Leigh's attorneys' fees and costs and an additional $50,000.**

With respect to Leyh, the Court finds he should be sanctioned for the following reasons: His conduct was willful and not negligent; he has engaged in similar conduct in other litigation and therefore his conduct was part of a pattern of activity, not an isolated event; the sanctionable conduct infected the entire pleading and resulted in Martin Leigh being unfairly dragged into this litigation; his behavior was either intended to injure Martin Leigh, or at least undertaken with callous indifference to the impact it would have on the firm; his behavior greatly increased the time and expense involved in this litigation and in the lawful foreclosure of the Property; Leyh is an officer of the Court and as such he knew, or should have known, that his actions violated Rule 55.03 and Rule 11; there are no mitigating factors here; and Leyh has not apologized for his behavior—in fact, his briefing continues to attack Martin Leigh. *See* Fed. R. Civ. P. 11(c) advisory committee's note to 1993 amendment (discussing factors to weigh in determining appropriate sanction).

The Court sanctions Leyh, and his law firm Gregory Leyh, P.C., by ordering them to reimburse Martin Leigh for its reasonable attorneys' fees and costs incurred defending this litigation, including litigating the motion for sanctions, and pay an additional $50,000 into the Court as a monetary penalty.  This sanction is imposed on Leyh and his law firm jointly and severally.  *See* Mo. Sup. Ct. R. 55.03(d)(1)(A) ("Absent exceptional circumstances a law firm shall be held jointly responsible for violations committed by its partners, associates, or employees."); Fed. R. Civ. P. 11 (c)(1) (using virtually identical language).

While these sanctions are substantial, the Court finds they are necessary to deter such conduct by Leyh and any other attorney who might emulate his behavior in the future.  Further, nothing in the record suggests these sanctions are beyond Leyh and his firm's ability to pay.

Indeed, he touts the amount of money he has earned using these litigation tactics as a justification for them. Hr'g Tr. from *Stagner*, Case No. 16RY-CV00249 at 25–26, Hr'g Ex. P7 ("And I get all kinds of results from large six-figure settlements, seven-figure settlements, lots of loan modifications. I then exit the house and wipe my feet on the welcome mat that either Kozeny or Millsap & Singer placed and I dismiss the trustee . . . .").

The Court now calculates Martin Leigh's reasonable attorneys' fees. In determining a reasonable amount of attorneys' fees under Missouri law, a court considers: (1) the time expended; (2) the nature, character, and amount of services rendered; (3) the nature and importance of the litigation; (4) the degree of responsibility imposed on the attorney; (5) the amount of money involved; (6) the degree of professional ability, skill, and experience called for and used; and (7) the result obtained. *Weitz Co. v. MH Washington*, 631 F.3d 510, 528–29 (8th Cir. 2011).

Martin Leigh argues that attorney's fees of $350 per hour and paralegal fees of $110 per hour are reasonable, particularly since Leyh himself sought $515 per hour when requesting sanctions against a successor trustee in another case. It has also provided an affidavit stating its attorneys and paralegals worked 188 hours in this litigation prior to April 16, 2019. ECF No. 77-1. Martin Leigh moves for $65,128 in attorney's fees incurred prior to April 16, 2019, and for additional fees accrued after that date.

Leyh opposes the request on a variety of grounds. He argues the fees sought are too high based on *Wivell v. Wells Fargo Bank, N.A.*, and that $220 per hour was an appropriate rate for mortgage defense litigation. Case No. 6:12-CV-03457-DGK, 2014 WL 835970 at *4 (W.D. Mo. Mar. 4, 2014). He also contends that the work done in this case was not particularly complex nor was it heavily litigated (as in the case where he sought $515 an hour); that it is unreasonable that all five attorneys who worked on this case bill at the same $350 an hour rate; and that Martin Leigh

overworked and mis-worked the file. Finally, he argues that Martin Leigh's failure to send a safe-harbor letter earlier resulted in excessive and unnecessary billing.

These arguments are unpersuasive. To begin, the work performed by Martin Leigh in this case is not analogous to the work in *Wivell*. This case involved a longer litigation history and more novel claims than in *Wivell*. Also, in this case, Martin Leigh's attorneys had the unenviable task of combing through Leyh's obfuscating briefs and correcting his numerous misstatements of law. For example, in support of his claim that there is an emerging trend in the law to hold that a trustee on a deed of trust owes a duty to a borrower to investigate the complete chain of title on a note, Leyh quoted a passage from the Missouri Practice Series Missouri Foreclosure Manual. To most effectively rebut this dubious claim, Martin Leigh's attorneys had to read through the rest of the Manual and find the author's actual view of the law, which is that "the trustee has no duty to investigate the various transfers of the promissory note and deed of trust." Steven Max Todd, 38 Missouri Practice Series, Missouri Foreclosure Manual § 2:3 (2016). Additionally, since this is the fourth lawsuit contesting the Note and Deed of Trust, this case qualifies as "heavily litigated."

The Court finds nothing objectionable about the fact that all five Martin Leigh attorneys are charging the same $350 an hour rate since all five have at least fourteen years of experience. William Meyer, who billed 169.2 of the 188 hours worked on this case prior to April 16, 2019, has over 25 years of legal experience. Thomas Fritzlen, who argued this motion, has over 30 years of legal experience. Nor does the Court see any evidence that the attorneys overworked the file. Leyh complains that Martin Leigh's work on its motion for summary judgment was redundant because it was performed while a motion to dismiss was pending. However, it was reasonable for Martin Leigh to work on both motions, particularly since both had a substantial likelihood of

49

success.  If the Court denied the motion to dismiss, Martin Leigh would be prepared to file its summary judgment motion.

As for the safe-harbor letter, Martin Leigh served Leyh with it on October 5, 2017—just two months into the lawsuit—when almost no work had been done on the case.  Leyh's intimation that if it had been served earlier he would have withdrawn the lawsuit and Martin Leigh would not have spent as much time working on the case is not credible.  Thus, the Court finds the attorneys' fee award sought by Martin Leigh is reasonable:  $65,128 plus additional fees accrued after April 16, 2019.  Leyh, and Gregory Leyh, P.C., are jointly and several liable to pay the entire amount.[29]

Martin Leigh shall submit an accounting of its reasonable expenses incurred after April 16, 2019, supported by billing records or other admissible evidence, on or before September 30, 2021.  Leyh shall have fourteen days to file a response.  This response shall not exceed five pages and shall not relitigate the Court's ruling, including arguing his culpability, mitigating factors, or ability to pay.[30]  If Leyh files a response, Martin Leigh shall have fourteen days to file a reply.  Martin Leigh's reply shall not exceed five pages.  The Court will then issue a final ruling on the amount of attorneys' fees.

**IT IS SO ORDERED.**

Date:   September 2, 2021                         /s/ Greg Kays
                                                 GREG KAYS, JUDGE
                                                 UNITED STATES DISTRICT COURT

---

[29] That is, minus the $5,000 Plaintiff is ordered to pay towards Martin Leigh's attorneys' fees.

[30] Leyh has already had ample opportunity to address these issues in his initial briefing, at the sanctions hearing, and in his post-hearing briefing.