# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| GWENDOLYN G. CARANCHINI, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NATIONSTAR MORTGAGE, LLC, ) <br> and MARTIN LEIGH, P.C., ) <br> ) <br> Defendants. ) | Case No. 4:17-cv-00775-DGK |

## ORDER DENYING MOTION TO VACATE OR AMEND THE SANCTIONS ORDER

This lawsuit is Plaintiff Gwendolyn Caranchini's fourth lawsuit brought to improperly frustrate a lawful foreclosure on her home. On September 2, 2021, the Court imposed sanctions on Plaintiff, her attorney, and her attorney's law firm. Order Granting Mot. for Sanctions ("Sanctions Order"), ECF No. 128. Now before the Court is attorney Gregory Leyh ("Leyh") and Gregory Leyh PC's motion to vacate or amend the Sanctions Order. ECF No. 131.

Leyh and his law firm argue the Court should vacate the Sanctions Order because it relies on a mistake of fact—that they were served with a safe-harbor letter on October 5, 2017, and not October 5, 2018—which they contend is material to the sanction analysis and to the reasonableness of Martin Leigh's attorneys' fees.

The motion is DENIED because Leyh waived these arguments by not raising them during the pendency of the Sanctions Motion. Even if these arguments had been timely raised, however, the Court would deny them because they are without merit.

## Background

On June 10, 2006, Plaintiff Gwendolyn Caranchini borrowed $300,000 to finance the purchase of a home. In 2009, she stopped making payments on the loan. Since then, she has filed a series of meritless lawsuits against the various note holders, loan servicers, and trustees on the Deed of Trust to prevent foreclosure.

The present case is Plaintiff's fourth such lawsuit. On August 15, 2017, two days before a scheduled foreclosure sale, Plaintiff—represented by Leyh—filed suit in the Circuit Court of Jackson County, Missouri. Plaintiff sued the loan servicer, Defendant Nationstar Mortgage, LLC ("Nationstar") and the successor trustee, Defendant Martin Leigh, P.C. ("Martin Leigh"). Defendants removed the case to this Court. On August 16, 2018, the Court denied Plaintiff's motion to remand after finding Plaintiff had fraudulently joined Martin Leigh, a Missouri citizen, to prevent removal. Order Denying Mot. To Remand at 7, ECF No. 24. The same order dismissed Plaintiff's claims against Martin Leigh.

On October 5, 2018, Martin Leigh served Leyh with a letter ("Safe-Harbor Letter") stating that Martin Leigh would file a motion for sanctions with the Court after thirty days "unless resolved to the firm's satisfaction." Safe–Harbor Letter at 2, ECF No. 132-1. Martin Leigh attached its prospective motion to the Safe-Harbor Letter.

Martin Leigh filed the motion for sanctions on November 16, 2018. Mot. for Sanctions Against Pl. and Pl.'s Counsel ("Sanctions Motion"), ECF No. 40. While Martin Leigh's initial briefing sought sanctions only under Missouri Supreme Court Rule 55.03 ("Rule 55.03"), its reply brief argued that Leyh had continued to advocate in federal court positions which he had taken in state court prior to removal, and that Leyh was therefore also subject to sanction under Federal Rule of Civil Procedure 11 ("Rule 11"). Reply Br. at 1–2, ECF No. 93.

On November 30, 2018, Leyh responded by filing a motion to dismiss the Sanctions Motion for lack of subject matter jurisdiction. ECF No. 48. In it, Leyh made multiple arguments for why the Court could not, or should not, sanction him. He did not argue in either the initial brief or the reply brief that the motion for sanctions was not timely made.

On April 8, 2019, the Court denied the motion to dismiss. ECF No. 76.

On May 16, 2019, Leyh filed a brief opposing the Sanctions Motion. ECF No. 84. In it, he made multiple detailed arguments contending he did nothing to warrant sanctions. He did not argue the motion was untimely.

After the Court held an evidentiary hearing, the parties filed post-hearing supplemental briefs. Leyh's post-hearing brief, ECF No. 122, largely reiterated arguments he had previously made. It also argued that Martin Leigh failed to mitigate its damages by not sending the safe harbor letter earlier. In conjunction with this argument, he quoted the advisory committee's comment that a motion, "if delayed too long, may be viewed as untimely." *Id*. at 18. He did not argue, however, that the motion was untimely.

On September 2, 2021, the Court entered the Sanctions Order. It ordered Leyh to pay $50,000 into the Court as a sanction. *Id*. at 47. It also ordered Leyh to pay Martin Leigh's reasonable attorneys' fees and costs incurred in the litigation, which it determined was $65,128, plus additional fees accrued after April 16, 2019.

The Court sanctioned Plaintiff and Leyh under both Rule 55.03 and Rule 11, noting that although the Rule 11 arguments were formally raised for the first time in a reply brief, neither Plaintiff nor Leyh had been prejudiced since their arguments against Rule 55.03 sanctions would mirror those they could raise against Rule 11 sanctions. Sanctions Order at 5, 13 n.11. The Sanctions Order did, however, mistakenly state that Martin Leigh served Leyh with the Safe-

3

Harbor Letter on October 5, 2017, instead of October 5, 2018. This mistake was based on a typographical error in Martin Leigh's briefing.

### **Standard**

Leyh's motion is properly brought under Federal Rule of Civil Procedure 54(b).[1] The standard applicable to a motion to reconsider under Rule 54(b) "is not clear, but 'it is typically held to be less exacting than would be a motion under [Rule] 59(e), which is in turn less exacting than the standards enunciated in [Rule] 60(b).'" *Jones v. Casey's Gen. Stores*, 551 F. Supp. 2d 848, 854–55 (S.D. Iowa 2008) (quoting *Allstate Ins. Co. v. Weber*, No. 1:05cv00039-WRW, 2007 WL 1427598, at *2 (E.D. Ark. May 11, 2007)).

A movant may use a motion for reconsideration under Rule 54(b) "to correct manifest errors of law or fact or to present newly discovered evidence." *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir.1988) (quotation omitted). However, a Rule 54(b) motion may not be used as a vehicle to raise new legal arguments which "could have been, but were not, raised or adduced during the pendency of the motion of which reconsideration [is] sought." *Jones*, 551 F. Supp. 2d at 855 (quotation omitted); *see also Hagerman*, 839 F.2d at 414 ("Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence. Such motions cannot in any case be employed as a vehicle to

---

[1] Leyh's motion is brought under Fed. R. Civ. P. 54(b), 59(e), and 60(b). Rules 59(e) and Rule 60(b) are not applicable, because the Sanctions Order was neither a judgment, as required by Rule 59(e), nor final, as required by Rule 60(b). The motion is properly brought under Rule 54(b), because the Sanctions Order is an "order . . . that adjudicates fewer than all . . . the rights and liabilities of fewer than all the parties." Fed. R. Civ. P. 54 (b). Such an order "does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating . . . all the parties' rights and liabilities." *Id.* Though all claims in this case have at this point been either dismissed or denied on summary judgment, Leyh is nonetheless an interested party as a result of Martin Leigh's motion for sanctions. Likewise, the Sanctions Order states that the attorney's fee award is not final until the Court enters an order setting the full amount attorney's fees. *See* Sanctions Order at 50, ECF No. 128. Because the Sanctions Order did not determine all of Leyh's liabilities, it is not a final order, and the Court has discretion to revise it under Rule 54(b). *See K.C.1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007) (reviewing a district court's denial of a motion for reconsideration under Rule 54(b) for abuse of discretion).

4

introduce new evidence that could have been adduced during pendency of [the relevant motion]. . . . Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time." (quotation omitted)).

### Discussion

Leyh's motion to vacate or amend the Sanctions Order raises three arguments: (1) Martin Leigh's motion for sanctions was untimely; (2) the motion for sanctions did not address Rule 11; and (3) the amount of attorney's fees awarded should be reduced. Each is unavailing.

I. **Leyh waived any argument that the motion was untimely.**

The bulk of Leyh's motion is spent arguing that the motion for sanctions was untimely because Martin Leigh did not serve the Safe Harbor letter until after the Court found the claims against it had been fraudulently joined to prevent removal and dismissed them.

A. **This argument has been waived.**

As a threshold matter, the Court cannot consider this argument because it has been waived. Leyh was served with the Safe-Harbor Letter on October 5, 2018, and could have raised this argument at any point thereafter. In fact, prior to filing the present motion, Leyh filed four briefs against the motion for sanctions, but never argued it was untimely. Consequently, this argument has been waived. [2] It cannot be presented now in a Rule 54(b) motion. *Hagerman*, 839 F.2d at 414.

---

[2] The closest Leyh came to arguing the motion was untimely was in a footnote to his reply in support of his motion to dismiss the sanctions motion for lack of subject matter jurisdiction. He wrote:

> Rule 11 requires that the sanctions motion be made "separately from any other motion," another part of the Rule that Martin Leigh ignores. Martin Leigh has also never complied with Rule 11's safe harbor provision. Rule 11 does not apply here, and this Court lacks authority to sanction Leyh based on Rule 11.

Reply Br. at 2 n.1, ECF No. 56. This is not a timeliness argument. Even if the Court were to construe it as one, it is insufficiently developed. *See Heuton v. Ford Motor Co.*, 930 F.3d 1015, 1023 (8th Cir. 2019) ("[W]e regularly decline to consider cursory or summary arguments that are unsupported by citations to legal authorities." (citation

5

Leyh acknowledges that he has not made this particular argument before. Reply in Supp. of Mot. for Reconsideration at 3, ECF No. 141. Leyh's explanation—that he could not have known of this issue until after the Court issued the Sanctions Order, because he didn't know that the Court would adopt Martin Leigh's erroneous October 5, 2017, date of service[3]—makes no sense. Leyh was served with the Sanctions Motion on October 5, 2018. He knew *at that time* that Martin Leigh had arguably waited too long to serve the Safe-Harbor Letter or file the Sanctions Motion. He did not make this argument, so it is waived.

### B. Even if this argument were not waived, it is unavailing.

Rule 11(c) governs the sanctions process. Relevant to the issue of timeliness, it states:

> (2) **Motion for Sanctions**. A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

Fed. R. Civ. P. 11(c)(2). The text of the rule does not require that the motion be brought at a particular time or within a certain number of days of the offending filing.

Leyh argues a moving party must give the attorney an opportunity to amend or withdraw before the Court rules on the offending pleading. He notes that the goal of the twenty-one-day notice provision in Rule 11(b) is to give the offending party a twenty-one day "safe harbor" period in which to withdraw a pleading before being sanctioned. He contends serving notice on the party

---

omitted)); *See also CTS Corp. v. E.P.A.*, 759 F.3d 52, 64 (D.C. Cir. 2014) ("A footnote is no place to make a substantive legal argument on appeal; hiding an argument there and then articulating it in only a conclusory fashion results in forfeiture.").

[3] While Leyh's briefing stated the correct date of service, the Court adopted the date given Martin Leigh Sanctions Motion for the reasons outlined in its credibility finding in the Sanctions Order. Sanctions Order at 14–16, ECF No. 128.

6

after the issue has been resolved "does not comply with the purpose of the timing requirements of Rule 11(c)." Mot. at 4.  He quotes a portion of the Advisory Committee note stating "the [Rule 11] motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely." Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments).  He adds, "[g]iven the 'safe harbor' provisions in Rule 11(c)(2), 'a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention).'" Mot. at 5 (quoting *id.*).

In fact, when read in its entirety, the Advisory Committee note confirms there is no deadline on when a Rule 11 motion must be filed.  It states:

> The revision leaves for resolution on a *case-by-case basis*, considering the particular circumstances involved, the question as to when a motion for violation of Rule 11 should be served and when, if filed, it should be decided.  *Ordinarily* the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, *may* be viewed as untimely.

Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments) (emphasis added).  The reference to "case-by-case basis," the word "ordinarily"—which Leyh's brief omits, and the word "may" are important because they indicate that the Advisory Committee did not believe there was a requirement that the safe harbor letter and motion be filed promptly after the offending filing is made.  The Committee anticipated that what was untimely would vary from case to case, and if a party waited too long, a court "may" (but not "must") view it as untimely.  Hence, the Court concludes that while the longer a party waits to file a Rule 11 motion the more likely a court is to find the motion untimely, there is no deadline for bringing a Rule 11 motion.

Leyh's observation that the Eighth Circuit requires "strict compliance with Rule 11's safe harbor provision," Mot. at 4, is correct, but his intimation that strict compliance includes a

requirement that a motion be brought promptly, is incorrect. The Eighth Circuit follows the text of Rule 11, which requires a motion for sanctions be brought (1) in a separate motion, and (2) observe the twenty-one day safe harbor provision. *Gordon v. Unifund CCR Partners*, 345 F.3d 1028, 1029 (8th Cir. 2003). Nothing more.

In this case, Martin Leigh's failure to file the motion earlier did not render it untimely. At most, Martin Leigh's failure to file the motion earlier goes to mitigation of damages (discussed below), not whether there was a Rule 11 violation.

## II. The Court did not err in awarding sanctions under Rule 11.

Leyh's second argument—that because Martin Leigh's initial motion relied only on Rule 55.03, they did not have sufficient notice as to the specific allegations regarding which Martin Leigh later sought sanctions under Rule 11—is also unavailing. The Court addressed this argument in the Sanctions Order and held Leyh received adequate notice. Sanctions Order at 13 n. 11, ECF No. 128. Because Martin Leigh's initial motion described the specific conduct upon which it sought sanctions under Rule 55.03, and because this is the same conduct for which the Court ultimately sanctioned him under Rule 11, Leyh received the required notice.[4]

## III. The attorneys' fees awarded to Martin Leigh were not excessive.

Arguing in the alternative, Leyh contends that if the Court will not vacate the Sanctions Order, it should at least reduce the attorney's fee award. His argument is as follows: (1) A party seeking sanctions under Rule 11 and Rule 55.03 has a duty to mitigate the costs it incurs in defending against meritless claims; (2) if Martin Leigh had sent the Safe-Harbor Letter soon after Leyh filed the claims against Martin Leigh, then he might have voluntarily dismissed the claims

---

[4] Tellingly, Leyh does not suggest he would have made any different arguments had Martin Leigh's initial motion and brief more clearly referenced Rule 11. The same arguments that apply to whether to impose sanctions under Rule 55.03 apply to whether to impose sanctions under Rule 11.

8

against Martin Leigh; and (3) by failing to send the Safe-Harbor Letter until after he could not withdraw the claims (because the Court had already dismissed them), Martin Leigh failed to mitigate its costs. Leyh does not state the amount of attorney's fees he considers appropriate, but it appears he believes Martin Leigh is only entitled to an amount equivalent to the cost of preparing and filing the Sanctions Motion and sending the Safe-Harbor Letter.

Because Leyh made this argument in his prior briefing and because the Court partially relied upon the erroneous date of service to conclude that Martin Leigh had sufficiently mitigated its costs,[5] the Court can (and because of its mistake of fact in the Sanctions Order should) address this argument.

While Leyh is correct that a party seeking sanctions under Rule 11 and Rule 55.03 has a duty to mitigate costs incurred in defending against meritless claims, *see White v. Gen. Motors Corp.*, 908 F.2d 675, 684 (10th Cir. 1990), the record demonstrates that even if Martin Leigh had sent the Safe-Harbor Letter immediately after Leyh filed this lawsuit, Leyh would not have withdrawn the claims. Martin Leigh's memorandum in support of its summary judgment motion, which was filed on November 21, 2017, argued that Plaintiff's claims against Martin Leigh were frivolous and that Leyh had potentially run afoul of Rule 11. Mem. in Supp. at 5, ECF No. 18 ("Plaintiff's Verified First Amended Petition makes stunningly false allegations."); *id.* at 27 ("[Leyh's] lack of candor is a horse of a different color in that it violates . . . Rule 11 (requiring counsel's certification that claims are warranted by existing law or a nonfrivolous argument to change the law) and Missouri Supreme Court Rule 4-3.3 (requiring candor toward the tribunal)."). Thus, Leyh had actual notice that there was a Rule 11 problem here. Despite this notice, Leyh did not voluntarily dismiss the claims. On the contrary, throughout the pendency of the Sanctions

---

[5] *See* Post-Hearing Br. in Further Opp'n at 18, ECF No. 122; Sanctions Order at 50.

Motion, Leyh maintained that his claims against Martin Leigh were colorable and never admitted to any wrongdoing.

Leyh argues that the Court "will never know how [he] would have responded if Martin Leigh had served its motion for sanctions prior to the Court's order denying remand . . . ." Reply in Supp. of Mot. for Reconsideration at 7, ECF No. 141. The record suggests otherwise. Given Leyh's vehement insistence at every turn that Martin Leigh was not fraudulently joined, and that he has done nothing wrong in this case, the record is clear that regardless of when Martin Leigh served the Safe-Harbor Letter, Leyh would not have dismissed the claims. Based upon Leyh's conduct, the Court believes that he would have litigated this motion in the exact same manner.

## Conclusion

Leyh's Motion to Vacate or Amend the Sanctions Order is DENIED. After the Court has determined the final attorney's fee award, it will enter a final order.

**IT IS SO ORDERED.**

Date: April 19, 2022          /s/ Greg Kays
                              GREG KAYS, JUDGE
                              UNITED STATES DISTRICT COURT